## INDEX TO EXHIBITS

Exhibit A          Loan Agreement

Exhibit B          Promissory Note

Exhibit C          Deed of Trust, Assignment of Rents, Security Agreement, and Fixture
                   Filing

Exhibit D          Collateral Assignment of Liens and Security Interests

Exhibit E          Agreement of Principals

Exhibit F          January 3, 2008 Notice and Demand for Payment of the Retained
                   Liabilities as provided in the Agreement of Principals

Exhibit G          February 4, 2008 Demand for Payment and Notice of Intent to File Legal
                   Action

# EXHIBIT "A"

▲    **This page is part of your document - DO NOT DISCARD**    ▲

**06 0113003**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
01/18/06 AT 08:00am**

**TITLE(S) :**

▲        ▲

L E A D    S H E E T

**FEE**    FEE $132-MM    D.T.T.
DAF $6 —    38
C-20    3T

**CODE
20**

**CODE
19**

**CODE
9**___

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

NOTIFICATION SENT $4

▲    THIS FORM IS NOT TO BE DUPLICATED    ▲

15

1/18/06

## UNITED TITLE CO.

PREPARED BY, RECORDING REQUESTED
BY AND WHEN RECORDED RETURN TO:
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Attn: Janis H. Loegering, Esq.

06  0113003

2

20500643-9

4333-12-50
4333-11-25
2851-14-8

(Space Above For Recorder's Use)

**Loan No. 70004172**

**THIS INSTRUMENT COVERS GOODS THAT ARE OR WILL BECOME FIXTURES ON THE DESCRIBED REAL PROPERTY AND SHOULD BE FILED FOR RECORD IN THE REAL PROPERTY RECORDS WHERE DEEDS OF TRUST ON REAL PROPERTY ARE RECORDED.**

**THE RECORDATION OF THIS INSTRUMENT SHALL ALSO CONSTITUTE A FIXTURE FILING IN ACCORDANCE WITH THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE AS ADOPTED BY THE STATE OF CALIFORNIA.**

**THIS INSTRUMENT SHOULD ALSO BE INDEXED AS A UNIFORM COMMERCIAL CODE FINANCING STATEMENT COVERING GOODS THAT ARE OR WILL BECOME FIXTURES ON THE DESCRIBED REAL PROPERTY. THE MAILING ADDRESSES OF THE SECURED PARTY AND THE DEBTOR ARE WITHIN.**

### DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

#### (Los Angeles and Newhall, County of Los Angeles, State of California)

This DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT (this "**Deed of Trust**") is made as of this 13th day of January, 2006, between the parties listed on Schedule I attached hereto (individually, a "**Borrower**" and collectively, the "**Borrowers**"), whose address is c/o Asset Real Estate and Investment Co., 443 Redcliff Drive, Suite 100, Redding, California 96001, Attention: Adam Peterson, CFO, in favor of Janis H. Loegering (herein referred to as "**Trustee**"), for the benefit of GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation, as Agent on behalf of Lender (as hereinafter defined) ("**Agent**" or "**Beneficiary**"), whose mailing address is 2 Bethesda Metro Center, Suite 600, Bethesda, Maryland 20814.

#### RECITALS

A.    Subject to the terms and conditions of that certain Loan Agreement dated of even date herewith (said Loan Agreement, as amended from time to time being hereinafter

**DEED OF TRUST** – Page 1
**AREI Portfolio I**
DALLAS: 35130 00028: 1436389v4

1/18/06

referred to as the **"Loan Agreement"**), executed by and among Borrowers, General Electric Capital Corporation, a Delaware corporation (in its individual capacity as a lender (**"GECC"**)) and the other financial institutions who are or hereafter become parties to the Loan Agreement (together with GECC, collectively or individually, as the context may require, as **"Lender"**) and Agent, Lender has agreed to make a loan (the **"Loan"**) to Borrowers. The Loan is evidenced by that certain promissory note of even date herewith in the original principal amount of Seventeen Million Two Hundred Thousand and No/100 Dollars ($17,200,000.00) (which note, together with all notes issued in full or partial replacements thereof, or in substitution or exchange therefor, and all amendments thereto, are hereinafter collectively referred to as the **"Note"**), providing for monthly payments as set forth in the Loan Agreement, with the balance thereof, due and payable on January 12, 2013 (said date, any later date to which the maturity date may be extended in accordance with the Loan Agreement or any earlier date on which the entire unpaid principal amount shall be paid or required to be paid in full, whether by prepayment, acceleration or otherwise is hereinafter called the **"Maturity Date"**). Capitalized terms used but not defined herein shall have the meaning provided in the Loan Agreement.

B. Lender and Agent wish to secure: (i) the payment of the Note, together with all interest, the "Make Whole Breakage Amount" and the "Prepayment Premium" (as defined in the Loan Agreement), and other amounts, if any, due in accordance with the terms of the Note, as well as the payment of any additional indebtedness accruing to Lender or Agent on account of any future payments, advances or expenditures made by Lender or Agent pursuant to the Note, the Loan Agreement or this Deed of Trust or any of the other Loan Documents (hereinafter defined); (ii) the performance of each and every covenant, condition, and agreement contained in the Note, the Loan Agreement, this Deed of Trust, that certain Agreement of Principals made by Principals in favor of Agent, that certain Environmental Indemnity Agreement of even date herewith made by Borrowers and Principals in favor of Agent and any other documents evidencing or securing the Loan or executed in connection therewith (such documents together with any modifications, renewals, extensions or replacements thereof are collectively referred to as the **"Loan Documents"**); and (iii) the payment and performance of any and all other debts, claims, obligations, demands, monies, liabilities and indebtedness of any kind or nature now or hereafter owing, arising, due or payable from Borrowers to Lender or Agent in connection with the Loan. All payment obligations of Borrowers or Principals to Lender or Agent with respect to the Loan or under any of the Loan Documents are hereinafter sometimes collectively referred to as the **"Indebtedness,"** and all other obligations of Borrowers or Principals to Agent with respect to the Loan or under any of the Loan Documents are hereinafter sometimes collectively referred to as the **"Obligations"**.

NOW, THEREFORE, TO SECURE the repayment of the Indebtedness and the performance of the Obligations, Borrowers have executed this Deed of Trust and does hereby mortgage, grant, bargain, sell, assign, pledge, transfer, and convey unto Trustee and to Trustee's successors and assigns, in trust, with power of sale and right of entry and possession forever, all of the following described land, improvements real and personal property, rents and leases, and all of its estate, right, title and interest therein and thereto (which property is hereinafter sometimes collectively referred to as the **"Property"**):

A. The real estate described on <u>Exhibit A</u> attached hereto (the **"Land"**);

**DEED OF TRUST** – Page 2
**AREI Portfolio I**
DALLAS 35130.00028 1436389v4

06  0113003

1/18/06

*4*

B.    All of the following (collectively, the **"Improvements"**):    all buildings, improvements and fixtures now or in the future located or to be constructed on the Land; to the extent not owned by tenants of the Property, all machinery, appliances, equipment, furniture, fixtures and all other personal property of every kind or nature located in or on, or attached to, or used or to be used in connection with the Land, buildings, improvements or fixtures; all building materials and goods procured for use or in connection with the foregoing; and all additions, substitutions and replacements to any of the foregoing;

C.    To the extent assignable by Borrowers, all plans, specifications, architectural renderings, drawings, soil test reports, other reports of examination or analysis of the Land or the Improvements;

D.    All easements, rights-of-way, water courses, mineral rights, water rights, air rights and appurtenances in any way belonging, relating or appertaining to any of the Land or Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto (collectively, **"Appurtenances"**);

E.    All leases, master leases, subleases, licenses and other agreements with regard to the use or occupancy of all or any portion of the Land and/or the Improvements, including without limitation, service agreements which include an occupancy agreement and all guaranties, amendments, extensions and renewals of any such lease, license or agreement, now or hereafter entered into and including, without limitation, the Master Lease (collectively, the **"Leases"**) and all rents, incomes, receipts, prepayments, security deposits, termination payments, royalties, profits, issues and revenues, prepayment of the same including without limitation, lease termination, cancellation or similar fees, and all other amounts of any nature now due or which may become due or to which Borrowers may now or shall hereafter become entitled or which it may demand or claim and arising or accruing directly or indirectly from the Leases or from the Land and/or Improvements from time to time (collectively, the **"Rents"**);

F.    To the extent assignable by Borrowers, all claims, demands, judgments, insurance proceeds, refunds, reserves, deposits, rights of action, awards of damages, compensation, settlements and other rights to the payment of money hereafter made resulting from or relating to (i) the taking of the Land or the Improvements or any part thereof under the power of eminent domain, (ii) any damage (whether caused by such taking, by casualty or otherwise) to the Land, Improvements, Appurtenances or other Property or any part thereof, or (iii) the ownership or operation of the Property;

G.    To the extent assignable by Borrowers, all management contracts, permits, certificates, licenses, approvals, contracts, purchase and sale agreements, purchase options, entitlements, development rights and authorizations, however characterized, issued or in any way furnished for the acquisition, construction, development, operation and use of the Land, Improvements and/or Leases, including building permits, environmental certificates, licenses, certificates of operation, warranties and guaranties;

H.    All of the following types of collateral, as defined in the Uniform Commercial Code as in effect from time to time in the State of California (the **"UCC"**): accounts, contract rights, general intangibles, chattel paper, documents, instruments, inventory, goods,

**DEED OF TRUST – Page 3**
**AREI Portfolio I**
DALLAS 35130.00028 1436389v4

**06  0113003**

18

1/18/06

S

equipment, investment property, deposit accounts, letter of credit rights, commercial tort claims, healthcare insurance receivables and all books and records relating to the foregoing; provided that Borrowers will cooperate with Agent in obtaining "control" as defined in the UCC, with respect to collateral consisting of deposit accounts, investment property, letter of credit rights and electronic chattel paper;

I.    Any monies on deposit with or for the benefit of Agent, including deposits for the payment of real estate taxes, insurance premiums and any cash collateral account;

J.    All proceeds, products, replacements, additions, substitutions, renewals and accessions of and to the Land, Improvements, Appurtenances or any other property of the types described in the preceding granting clauses; and

K.    Any and all after-acquired right, title or interest of Borrowers in and to any property of the types described in the preceding granting clauses.

TO HAVE AND TO HOLD the Property and all parts thereof together with the rents, issues, profits and proceeds thereof, unto Trustee, in trust, for the benefit of Beneficiary, subject, however, to the terms, covenants, and conditions herein.

Borrowers covenant and agree with Agent as follows:

1.    **Payment of Indebtedness; Performance of Obligations**.  Borrowers shall promptly pay when due the Indebtedness and shall promptly perform all Obligations.

2.    **Taxes and Other Obligations; Insurance and Condemnation Proceeds**.

(a)    Borrowers shall pay or cause to be paid, when due, and before any interest, collection fees or penalties shall accrue, all Taxes in accordance with Section 7.3 of the Loan Agreement.

(b)    Should Borrowers fail to make any of such payments, Agent may, at its option and at the expense of Borrowers, pay the amounts due for the account of Borrowers. Upon the request of Agent, Borrowers shall immediately furnish to Agent copies of all notices of amounts due and receipts evidencing payment.  Borrowers shall promptly notify Agent of any lien on all or any part of the Property and shall promptly discharge any unpermitted lien or encumbrance.

(c)    Insurance and condemnation proceeds shall be paid and applied in accordance with Sections 3.2 and 3.3 of the Loan Agreement.

3.    **Preservation and Maintenance of Property**.  Borrowers shall: (a) not commit waste or permit impairment or deterioration of the Property; (b) not abandon the Property; (c) keep the Property (or cause the Property to be kept) in good repair and restore or repair promptly, in a good and workmanlike manner, all or any part of the Property to the equivalent of its original condition as of the date of this Deed of Trust, or such other condition as Agent may approve in writing, upon any damage or loss thereto; (d) comply (or cause compliance) in all material respects with all laws, ordinances, regulations and requirements of

**DEED OF TRUST – Page 4**
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

1/18/06

any governmental body applicable to the Property; (e) give notice in writing to Agent of and, unless otherwise directed in writing by Agent, appear in and defend any action or proceeding purporting to affect the Property, the security granted by the Loan Documents or the rights or powers of Agent and (f) provide for management of the Property by a property manager reasonably satisfactory to Agent pursuant to a contract in form and substance reasonably satisfactory to Agent. None of the Borrowers or any tenant (including any master tenant) or other person shall remove, demolish or alter any Improvement on the Land except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

4.   **Protection of Agent's and/or Lender's Security.**   If (a) Borrowers fail to pay the Indebtedness or to perform the Obligations, (b) any action or proceeding is commenced which affects or could affect the Property or Agent's or Lender's interest therein, including any loss, damage, cost, expense or liability incurred by Agent or Lender with respect to (i) any environmental matters relating to the Property or (ii) the preparation of the commencement or defense of any action or proceeding or any threatened action or proceeding affecting the Loan Documents or the Property, then Agent, at Agent's option, may make such appearances, disburse such sums and take such action as Agent deems necessary, in its sole discretion, to protect the Property or Agent's or Lender's interest therein, including entry upon the Property to take such actions Agent determines appropriate to preserve, protect or restore the Property. Any amounts disbursed by Agent or Lender pursuant to this <u>Section 4</u> (including attorneys' fees, costs and expenses), together with interest thereon at the Default Rate from the date of disbursement, shall become additional Indebtedness of Borrowers secured by the lien of this Deed of Trust and the other Loan Documents and shall be due and payable on demand. Nothing contained in this <u>Section 4</u> shall require Agent or Lender to incur any expense or take any action hereunder.

5.   **Actions.**   Except as disclosed in the exceptions to title in the title policy approved by Agent issued by First American Title Insurance Company insuring the priority of this Deed of Trust, Borrowers shall warrant title and appear in and defend any claim or any action or other proceeding purporting to affect title or other interests relating to any part of the Property, the security of this Deed of Trust or the rights of Agent or Lender, and give Agent prompt written notice of any such claim, action or proceeding. Agent may, at the expense of Borrowers, appear in and defend any such claim, action or proceeding and any claim, action or other proceeding asserted or brought against Agent or Lender in connection with or relating to any part of the Property or this Deed of Trust or involving the priority, validity or enforceability of any Loan Document.

6.   **Assignment of Rents.**

(a)   To secure payment and performance of the Indebtedness and Obligations, in addition to, and not in contravention of, the assignment of the Leases and Rents in the preceding granting clauses of this Deed of Trust, Borrowers absolutely and unconditionally assign and transfer to Agent, for the benefit of Agent and Lender, all of Borrowers' right, title and interest in and to (i) the Leases, (ii) the Rents and the immediate and continuing right to collect and receive all of the Rents, and (iii) any and all rights and claims of any kind that Borrowers may have now or in the future against any present or future tenant, subtenant or occupant of the Property (each, a "**Tenant**"). In furtherance of this assignment, and not in lieu

<u>DEED OF TRUST</u> – **Page 5**
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

06  0113003

1/18/06

thereof, promptly upon request by Agent, Borrowers agree to execute and deliver such further assignments as Agent may from time to time require.

(b)    All of the Rents and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by damage to any part of the Property, together with any and all rights that Borrowers may have against any Tenant under the Leases or any subtenants or occupants of any part of the Property and any award made hereafter to Borrowers in any court proceedings involving any of the Tenants or in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and all payments by Tenants in lieu of Rent, are hereby absolutely and unconditionally assigned to Agent, for the benefit of Agent and Lender, to be applied by Agent in accordance with the terms of the Loan Agreement. It is understood and agreed by the parties that this assignment of the Leases and Rents is intended to be and is a present, absolute, and unconditional assignment from Borrowers to Agent, and not merely the passing of a security interest, and shall, immediately upon execution, give Agent the right to collect the Rents and to apply them in payment of the Indebtedness. Such assignment and grant shall continue in effect until the Indebtedness is paid in full. Subject to the provisions set forth herein and, so long as there shall not have occurred an Event of Default, Borrowers shall have a license, without joinder of Agent, to enforce the Leases subject to the terms of the Loan Documents, and to collect the Rents as they come due (but not more than one (1) month in advance and excluding any lease termination, cancellation or similar payments which Borrowers agree shall be held in trust and turned over to Agent to be applied to the Indebtedness in accordance with the terms of the Loan Agreement) and to retain, use and enjoy the same. The Rents shall be held by Borrowers in trust, to be applied first to the payment of all impositions, levies, taxes, assessments and other charges upon the Property, second to maintenance of insurance policies upon the Property required hereby, third to the expenses of Property operations, including maintenance and repairs required hereby (other than payment of fees to Affiliates of Borrowers), fourth to the payment of that portion of the Indebtedness then due and payable, and fifth, the balance, if any, to or as directed by Borrowers. Borrowers shall deliver such other Rents to Agent as are necessary for the payment of the Indebtedness as such sums become due. If an Event of Default has occurred, Borrowers' right to collect and secure the Rents shall cease and Agent shall have the sole right, with or without taking possession of the Property to collect all Rents.

(c)    Borrowers hereby irrevocably appoint Agent their true and lawful attorney-in-fact, with full power of substitution and with full power of substitution and with full power for Agent in its own name and capacity or in the name and capacity of Borrowers to demand and collect any and all Rents and to file any claim or take any other action or proceeding and make any settlement regarding the Leases. All Tenants are hereby expressly authorized and directed to pay to Agent, or to such nominee as Agent may designate in a writing delivered to such Tenants, all amounts due Borrowers pursuant to the Leases. All Tenants are expressly relieved of all duty, liability or obligation to Borrowers in respect of all payments so made to Agent or such nominee.

(d)    After an Event of Default, Agent may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Indebtedness and the Obligations and without regard to solvency of Borrowers:

1/18/06

(i)    Enter upon, take possession of and manage the Property, or any part thereof, for the purpose of collecting the Rents in its own name sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon the Indebtedness and in such order as Agent may so determine;

(ii)    Dispossess by the usual summary proceedings any Tenant defaulting in the payment thereof to Borrowers, lease the Property or any party thereof, repair, restore, and improve the Property;

(iii)    Apply the Rent after payment of Property expenses as determined by Agent to the Indebtedness in accordance with the terms of the Loan Agreement; and

(iv)    Apply to any court of competent jurisdiction for specific performance of this Deed of Trust, an injunction against the violation hereof and/or the appointment of a receiver.

(e)    The collection of Rents, or the entering upon and taking possession of the Property, or the application thereof as aforesaid, shall not cure or waive any Event of Default or notice of an Event of Default hereunder or invalidate any act done in response to such Event of Default or pursuant to such notice of an Event of Default. In the event Borrowers, as lessor under the Leases, shall fail to perform and fulfill in any material respect any material term, covenant, condition, or provision in the Leases, on its part to be performed or fulfilled, at the time and in the manner in the Leases provided, or if the Borrowers shall suffer or permit to occur any breach or default under the provisions of the Leases, or any of them, and such default shall give the Tenant thereunder the right to terminate its Lease or otherwise shall continue for a period of thirty (30) days following the giving of written notice of such default to Borrowers, then and in any such event, such breach or default shall constitute an Event of Default.

(f)    In the event Borrowers fail to perform any Lease covenant, Agent may, at its option, upon prior notice to Borrowers (except in the event of an emergency) perform any Lease covenant for and on behalf of Borrowers, and all monies expended in so doing shall be chargeable to Borrowers and added to the Indebtedness and shall be immediately due and payable.

(g)    Borrowers hereby covenant and agree as follows:

(i)    This Deed of Trust transfers to Agent all of Borrowers' right, title, and interest in any security deposits under the Lease held by Borrowers (or by the Master Tenants, Property Managers on behalf of Borrowers), provided that Borrowers shall have the right to retain and apply the security deposits so long as no Event of Default has occurred under this Deed of Trust or the Loan Documents. Agent shall have no obligation to any Tenant with respect to its security deposit unless and until Agent comes into possession of the deposit.

(ii)    Agent may assign its right, title and interest in the Leases, Rents and other Property, and any subsequent assignee shall have all of the rights and powers provided to Agent by this Deed of Trust.

**DEED OF TRUST** – Page 7
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

06  0113003

1/18/06

*q*

        (iii)    Borrowers shall not without the prior written consent of Agent: (a) perform any act or execute any other instrument which might interfere with the exercise of Agent's or Lender's rights hereunder; (b) execute any assignment, pledge or hypothecation of Rents or any of the Leases; or (c) suffer or permit any of the Leases to become subordinate to any lien other than the lien of this Deed of Trust.

        (h)    This Deed of Trust shall not be deemed to impose upon Agent or Lender any of the obligations or duties of the landlord or Borrowers provided in any Lease. Borrowers hereby acknowledge and agree: (i) Borrowers are and will remain liable under the Leases to the same extent as though this Deed of Trust had not been made; and (ii) Agent has not by this Deed of Trust assumed any of the obligations of Borrowers under the Leases, except as to such obligations which arise after such time as Agent shall have assumed actual ownership or control of the Property. This Deed of Trust shall not make Agent responsible for the control, care, management, or repair of the Property or any personal property or for the carrying out of any of the terms of the Leases unless and until Agent takes possession or actual control of the Property. Agent and Lender shall not be liable in any way for any injury or damage to person or property sustained by any person or persons, firm, or corporation in or about the Property absent gross negligence or willful misconduct by such Person.

        (i)    In the event any Tenant should be the subject of any proceeding under the Federal Bankruptcy Code or any other federal, state, or local statute which provides for the possible termination or rejection of any Lease, Borrowers covenant and agree no settlement for damages shall be made without the prior written consent of Agent, which consent shall not be unreasonably withheld or delayed, and any check in payment of damages for rejection of any Lease will be made payable both to Borrowers and Agent. Borrowers hereby assign any such payment to Agent and further covenants and agrees that it will duly endorse to the order of Agent any such check.

        (j)    After an Event of Default, then, without further notice to, or the consent of, Borrowers, Agent shall be entitled to exercise all of the rights and remedies contained in this Deed of Trust or in any other Loan Document or otherwise available at law or in equity including, without limitation, the right to do any one or more of the following:

        (i)    To enter upon, take possession of and manage the Property for the purpose of collecting the Rents;

        (ii)    Dispossess by the usual summary proceedings any Tenant defaulting in the payment thereof to Borrowers;

        (iii)    Lease the Property or any part thereof;

        (iv)    Repair, restore, and improve the Property;

        (v)    Apply the Rents after payment of Property expenses as determined by Agent to the Indebtedness and the Obligations in such order as Agent may determine; and

**06  0113003**

1/18/06

*10*

(vi)    Apply to any court of competent jurisdiction for specific performance of this Deed of Trust, an injunction against the violation hereof and/or the appointment of a receiver.

(k)    Borrowers hereby agree to indemnify Agent and Lender to hold Agent and Lender harmless from any liability, loss or damages including, without limitation, reasonable attorney's fees, costs and expenses which may or might be incurred by Agent under the Leases or by reason of this Deed of Trust, and from any and all claims and demands which may be asserted against Agent or Lender by reason of any term, covenant or agreement contained in any of the Leases, except for any such liability, loss or damage resulting solely from Agent's or Lender's gross negligence or willful misconduct.

(l)    The assignment of Leases and Rents set forth in this Section 6 and the granting clauses of this Deed of Trust shall run with the land and be good and valid against Borrowers or those claiming by, under or through Borrowers, from the date hereof and such assignment shall continue to be operative during the foreclosure or any other proceeding taken to enforce this Deed of Trust. In the event of a sale or foreclosure which shall result in a deficiency, such assignment shall stand as security during the redemption period of the payment of such deficiency. Agent shall be permitted, at its sole option, to exercise remedies under such assignment separately from remedies exercised against other portions of the Property.

7.    **Statements by Borrowers.**  Borrowers shall within ten (10) days after Agent's request, furnish Agent with a written statement, duly acknowledged, setting forth the sums, according to Borrowers' books and records, secured by the Loan Documents and any right of set-off, counterclaim or other defense which exists against such sums and the Obligations.

8.    **No Additional Liens, Encumbrances or Indebtedness.**  Borrowers covenant not to execute any mortgage, deed of trust, security agreement, assignment of leases and rents or other agreement granting a lien (except the liens granted to Agent by the Loan Documents) against or encumbrance on the Property or take or fail to take any other action which would result in a lien against the Property or the interest of Borrowers (or Principals) in the Property without the prior written consent of Agent; provided, however, Borrowers may in good faith, by appropriate proceeding, contest the validity or amount of any asserted lien in accordance with the terms of the Loan Agreement and pending such contest, Borrowers shall not be deemed to be in default hereunder.

9.    **Borrowers and Lien Not Released.**  Without affecting the liability of Borrowers for any of the Indebtedness or the Obligations, or any other person liable for the payment of the Indebtedness or the performance of any Obligations, and without affecting the lien or charge of this Deed of Trust as security for the payment of the Indebtedness, Agent may, from time to time and without notice to any junior lien holder or holder of any right or other interest in and to the Property: (a) release any person liable for payment of all or any portion of the Indebtedness or performance of the Obligations; (b) waive or modify any provision of this Deed of Trust or the other Loan Documents or grant other indulgences; (c) release all or any part of the Property; (d) take additional security for any obligation herein mentioned; (e) subordinate the lien or charge of this Deed of Trust; (f) consent to the granting of any easement; or (g) consent to any map, plat or plan of the Property.

**DEED OF TRUST** – Page 9
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

**06  0113003**

24

1/18/06

10. **Uniform Commercial Code Security Agreement.**

(a)    This Deed of Trust shall cover, and the Property shall include, all property now or hereafter affixed or attached to the Land, which to the fullest extent permitted by law, shall be deemed fixtures and a part of the Land.  With respect to the Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State of California, **THIS DEED OF TRUST SHALL ALSO CONSTITUTE A FINANCING STATEMENT AND A FIXTURE FILING UNDER THE CALIFORNIA UNIFORM COMMERCIAL CODE.**  In addition, this Deed of Trust shall constitute a security agreement pursuant to the UCC for any portion of the Property which, under applicable law, may be subject to a security interest pursuant to the UCC (such portion of the Property is hereinafter called the **"Personal Property"**) and Borrowers hereby grant to Agent, for the benefit of Agent and Lender, a security interest in the Personal Property.  Agent shall have all of the rights and remedies of a secured party under the UCC as well as all other rights and remedies available at law or in equity.

(b)    Borrowers hereby authorize Agent to file any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Deed of Trust, all in such form as Agent may require to perfect a security interest with respect to the Personal Property.  Borrowers hereby authorize and empower Agent and irrevocably appoint Agent their agent and attorney-in-fact to execute and file, on Borrowers' behalf, all financing statements and refilings and continuations thereof as Agent deems necessary or advisable to create, preserve and protect such lien.  Borrowers shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements as Agent may reasonably require.

(c)    Borrowers shall not, without the prior written consent of Agent, sell, assign, transfer, encumber, remove or permit to be removed from the Property any of the Personal Property.  So long as no Event of Default exists, Borrowers may sell or otherwise dispose of the Personal Property when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of the Property, but only upon replacing the same with other Personal Property at least equal in value and utility to the disposed Personal Property.  Any replacement or substituted Personal Property shall be subject to the security interest granted herein.

(d)    To the extent permitted by law, Borrowers, Lender and Agent agree that with respect to all items of Personal Property which are or will become fixtures on the Land, this Deed of Trust, upon recording or registration in the real estate records of the proper office, shall constitute a "fixture filing" within the meaning of the UCC.

(e)    After an Event of Default, Agent may exercise in respect of the Personal Property, in addition to all other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Personal Property) and also may:  (i) require Borrowers to, and Borrowers hereby agree that they will, at their expense and upon request of Agent, forthwith assemble all or part of the Personal Property as directed by Agent and make it available to Agent at any reasonable place or places designated by Agent; and (ii) without notice except as specified

**DEED OF TRUST** – Page 10
**AREI Portfolio I**
DALLAS: 35130 00028 1436389v4

06  0113003

1/18/06

below, sell, lease or otherwise dispose of the Personal Property or any part thereof in one or more parcels at public or private sale, and without the necessity of gathering at the place of sale of the property to be sold, at any of Agent 's offices or elsewhere, at such time or times, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as Agent may deem commercially reasonable.

(f)    Borrowers agree that, to the extent notice of sale shall be required by law, a reasonable authenticated notification of disposition shall be a notification given at least ten (10) days prior to any such sale and such notice shall (i) describe Agent and Borrowers, (ii) describe the Personal Property that is the subject of the intended disposition, (iii) state the method of intended disposition, (iv) state that Borrowers are entitled to an accounting of the Indebtedness and stating the charge, if any, for an accounting, and (v) state the time and place of any public disposition or the time after which any private sale is to be made.  Notwithstanding the foregoing, to the contrary, no notification need be given to Borrowers if they have authenticated after default a statement renouncing or modifying any right to notification of sale or other intended disposition.  At any sale of the Personal Property, if permitted by law, Agent may bid (which bid may be, in whole or in part, in the form of cancellation of indebtedness) for the purchase, lease, license or other disposition of the Personal Property or any portion thereof for the account of Agent.  Agent shall not be obligated to make any sale of Personal Property regardless of notice of sale having been given.  Agent may disclaim any warranties that might arise in connection with the sale, lease, license or other disposition of the Personal Property and have no obligation to provide any warranties at such time.  Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefore, and such sale may, without further notice, be made at the time and place to which it was so adjourned.  To the extent permitted by law, Borrowers hereby specifically waive all rights of redemption, stay or appraisal which it has or may have under any applicable law now existing or hereafter enacted.

(g)    After an Event of Default, Agent or its agents or attorneys shall have the right without further notice or demand or legal process (unless the same shall be required by applicable law), personally, or by its agents or attorneys, (i) to enter upon, occupy and use any premises owned or leased by Borrowers or where the Personal Property is located (or is believed to be located) for so long as such entry, occupancy and use is necessary, without any obligation to pay rent to Borrowers, to render the Personal Property useable or saleable and to remove the Personal Property or any part thereof therefrom to the premises of Agent or any agent of Agent for such time as Agent may desire in order to effectively collect or liquidate the Personal Property and use in connection with such removal and any and all services, supplies and other facilities of Borrowers; (ii) to make copies of and have access to Borrowers' original books and records, to obtain access to Borrowers' data processing equipment, computer hardware and software relating to the Personal Property and to use all of the foregoing and the information contained therein in any manner Agent deems appropriate; and (iii) to notify postal authorities to change the address for delivery of Borrowers' mail to an address designated by Agent and to receive, open and dispose of all mail addressed to Borrowers.

11.  **Events of Default; Acceleration of Indebtedness.**  The occurrence of any Event of Default (as such term is defined in the Loan Agreement) shall constitute an "**Event of Default**" under this Deed of Trust.  Upon the occurrence and continuance of an Event of Default, at the option of Agent, the Indebtedness shall become immediately due and payable without

**DEED OF TRUST – Page 11**
**AREI Portfolio I**
DALLAS: 35130.00028  1436389v4

06  0113003

1/18/06

13

further notice to Borrowers and Agent shall be entitled to all of the rights and remedies provided in the Loan Documents or at law or in equity. Each remedy provided in the Loan Documents is distinct and cumulative to all other rights or remedies under the Loan Documents or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

12. **Remedies Upon Default.** During the existence of any Event of Default and at any time after acceleration of the Maturity Date, Beneficiary shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Deed of Trust or any other Loan Document or provided by law or in equity, and is hereby authorized and empowered by Borrowers, to do any or all of the following:

(a)    Declare without notice the entire unpaid amount of the Indebtedness immediately due and payable, by commencing an action to foreclose this Deed of Trust by judicial foreclosure, and/or by delivery to Trustee of a written declaration of default and demand for sale and of written notice of default and of election to cause the Property to be sold, which notice Trustee shall cause to be duly filed for record in case of foreclosure by exercise of the power of sale herein. Should Beneficiary elect to foreclose by exercise of the power of sale herein, Beneficiary shall also deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require, and notice of sale having been given as then required by law and after lapse of such time as may then be required by law after recordation of such notice of default, Trustee, without demand on Borrowers, shall sell the Property at the time and place of sale fixed by Trustee in such notice of sale as Beneficiary may direct, either as a whole or in separate parcels, as Beneficiary may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Beneficiary shall have the right to direct the order in which separate parcels shall be sold and Borrowers shall have no right to direct the order in which separate parcels are sold. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser Trustee's deed conveying the Property, or any portion thereof, so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Borrowers, Trustee or Beneficiary, may purchase at such sale. In the event of any acceleration of the Indebtedness pursuant to this Section 12(a), Borrowers shall pay to Beneficiary together with the principal Indebtedness and interest thereon an amount equal to the Make Whole Breakage Amount and Prepayment Premium provided for in the Loan Documents, and such fee shall be included as part of the Indebtedness.

(b)    Proceed against the Personal Property in accordance with Beneficiary's rights and remedies with respect to the Personal Property, including the right to sell the Personal Property together with the Real Property separately and without regard to the remainder of the Property in accordance with Beneficiary's rights and remedies provided by the UCC as well as other rights and remedies available at law or in equity.

**DEED OF TRUST** – Page 12
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

06  0113003

1/18/06

14

(c)     Cause to be brought down to date a title examination and tax histories of the Property, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(d)     Procure an updated or entirely new environmental audit of the Property including building, soil, ground water and subsurface investigations; have the Improvements inspected by an engineer or other qualified inspector and procure a building inspection report; procure an MAI or other appraisal of the Property or any portion thereof; enter upon the Property at any time and from time to time to accomplish the foregoing and to show the Property to potential purchasers and potential bidders at foreclosure sale; make available to potential purchasers and potential bidders all information obtained pursuant to the foregoing and any other information in the possession of Beneficiary regarding the Property.

(e)     Either by itself or by its agent to be appointed by it for that purpose or by a receiver appointed by a court of competent jurisdiction, as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Obligations or the solvency of any party bound for its payment, take possession of and operate the Property, Borrowers hereby waiving any right Borrowers might have to object to or oppose any such possession, and, whether or not Beneficiary has taken possession of the Property, to collect and apply the Rents, including those past due and unpaid, after payment of all necessary charges and expenses, in reduction of the Indebtedness. The receiver shall have all of the rights and powers permitted under the laws of the State of California. Beneficiary's rights hereunder include Beneficiary's rights under California Code of Civil Procedure ("CCP") Section 564, as such Section 564 may be amended from time to time. Except for damage caused by Beneficiary's gross negligence or willful misconduct, Borrowers hereby waive any claim Borrowers may have against Beneficiary for mismanagement of the Property during Beneficiary's operation of the Property under this subparagraph or as mortgagee in actual possession under applicable statutes.

(f)     Beneficiary may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Beneficiary in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Borrowers to Beneficiary with interest thereon at the Default Rate. Beneficiary shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Beneficiary is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Borrowers or any person in possession holding under Borrowers.

(g)     Apply against the Obligations in such order as Beneficiary shall determine any funds held for the benefit of Borrowers in escrow by Beneficiary or by any third-party escrow agent under any of the Loan Documents.

(h)     Upon any foreclosure sale, Beneficiary may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price. In the event of any sale of the Property pursuant to Section 12(a) above, the proceeds of any such sale which are applied in accordance with this Deed of Trust shall be applied in the following order to: (i) all expenses incurred for the collection of the Indebtedness

**DEED OF TRUST** – Page 13
**AREI Portfolio I**
DALLAS 35130.00028 1436389v4

06  0113003

1/18/06

I5

and the foreclosure of this Deed of Trust, including reasonable compensation to Trustee and Beneficiary, their agents and attorneys; (ii) all sums expended or incurred by Beneficiary and/or Trustee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Obligations, of this Deed of Trust and any other Loan Documents, together with interest thereon as therein provided; (iii) all late payment charges, the Make Whole Amount and the Prepayment Premium, advances and other amounts due under any of the Loan Documents; (iv) all accrued and unpaid interest upon the Obligations; (v) the unpaid principal amount of the Obligations; and (vi) the surplus, if any, to the person or persons legally entitled thereto.

(i)     Beneficiary may, to the extent permitted under CCP Section 726.5, as such Section 726.5 may be amended from time to time, waive the security of this Deed of Trust as to any parcel of real property which is "environmentally impaired" or is an "affected parcel" (as such terms are defined in CCP Section 726.5) and as to any Personal Property attached to such parcel, and thereafter exercise against Borrowers, to the extent permitted under CCP Section 726.5, the rights and remedies of an unsecured creditor, including without limitation, reduction of Beneficiary's claim to judgment, and any other rights remedies permitted by law. In the event Beneficiary elects, in accordance with this Section 26(j), to waive all or part of the Property of this Deed of Trust pursuant to CCP Section 726.5 and proceed against Borrowers on an unsecured basis, the valuation of the real property, the determination of the environmentally impaired status of such Property and any cause of action for a money judgment shall, at the request of Beneficiary, be referred to a referee in accordance with the CCP Section 638 et seq. Such referee shall be an independent, M.A.I. appraiser selected by Beneficiary and approved by Borrowers, which approval shall not be unreasonably withheld or delayed. The decision of such referee shall be binding upon both Borrowers and Beneficiary, and judgment upon the award rendered by such referee shall be entered in the court in which such proceeding was commenced in accordance with the CCP Section 644 and CCP Section 645.

(j)     Beneficiary may, in accordance with CCP Section 736, as such Section 736 may be amended from time to time, bring an action against Borrowers for breach of any "environmental provision" (as such term in defined in CCP Section 736) made by Borrowers herein or, in the Environmental Indemnity Agreement dated of even date herewith between Agent, Borrowers and Principals, or in any other Loan Document, for the recovery of damages and/or the enforcement of any such "environmental provision".

In the event of any acceleration of the Indebtedness pursuant to the first paragraph of this Section, Borrowers shall pay to Beneficiary together with the principal indebtedness and interest thereon an amount equal to the Prepayment Premium and/or Make Whole Breakage Amount provided for in the Loan Agreement and such fee shall be included as part of the Indebtedness.

Failure to exercise any option to accelerate in the Event of a Default or other circumstance permitting the exercise of such option or to exercise any other right, power or remedy hereunder, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option, right, power or remedy in the event of any other default or circumstance specified in this Section 12.

13.  **Reserved**.

**DEED OF TRUST** – Page 14
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

**06  0113003**

1/18/06

16

)

14. **Expenditures and Expenses**. In any action to foreclose the lien hereof or otherwise enforce Agent's or Lender's rights and remedies hereunder, there shall be allowed and included as additional Indebtedness all costs and expenses which may be paid or incurred by or on behalf of Agent or Lender, including without limitation, the costs of collection, enforcement, retaining, holding, preparing for disposition, processing and disposing of the Personal Property, appraiser's fees, outlays for documentary and expert evidence, stenographic changes, publication costs and costs (which may be estimated as the items to be expended after the entry of the decree) of procuring all such abstracts of title, title searches and examination, UCC record searches, title insurance policies, and similar data and assurance with respect to title as Agent may deem to be reasonably necessary either to prosecute any foreclosure action or to evidence to the bidder at any sale pursuant thereto the true condition of the title to or the value of the Property. All such costs and expenses, together with such other costs and expenses as may be incurred by Agent or Lender in the protection of the Property, maintenance of the lien of this Deed of Trust or in any workout or restructuring of the Loan including, attorneys' fees and costs in any negotiation, litigation or other proceeding affecting this Deed of Trust, the Note, the other Loan Documents, the Property or the Personal Property, including probate, appellate, and bankruptcy proceedings and any post-judgment proceedings to collect or enforce any judgment or order relating to this Deed of Trust or the other Loan Documents or in preparation for the commencement or defense of any action or proceeding or threatened action or proceeding, shall be immediately due and payable to Agent, with interest thereon at the Default Rate, and shall be secured by this Deed of Trust.

15. **Reserved**.

16. **Future Advances**. This Deed of Trust is given to secure not only the existing Indebtedness and Obligations, but also future advances (whether such advances are obligatory or are made at the option of Lender or Agent, or otherwise) made by Agent or Lender under the Loan Agreement, the Note, this Deed of Trust or any of the other Loan Documents, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust. It is the intent hereof to secure payment of the Indebtedness whether the entire amount shall have been advanced to Borrowers at the date hereof, or at a later date, and to secure any other amount or amounts that may be added to the Indebtedness or Obligations. The total amount of the Indebtedness and Obligations secured hereby may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed five (5) times the aggregate face amount of the Note in principal plus interest thereon and any disbursements made for the payment of taxes, levies, or insurance on the Property with interest thereon. This Deed of Trust shall secure any and all additional or further monies which may be advanced by Lender or Agent to Borrowers after the date hereof, which future advances of money, if made, may be evidenced by a note or notes executed by one or more Borrowers to Lender and Agent bearing such rate of interest and with such maturities as shall be determined from time to time, but any and all such future advances secured by this Deed of Trust shall be made not more than twenty (20) years after the date hereof. Nothing herein contained shall be deemed an obligation on the part of Lender or Agent to make any future advances.

17. **Waiver of Statute of Limitations**. Borrowers hereby waive the right to assert any statute of limitations as a bar to the enforcement of the lien created by any of the Loan

1/18/06

17

Documents or to any action brought to enforce the Note or any other obligation secured by any of the Loan Documents.

18. **Waiver of Homestead and Redemption**. Borrowers hereby waive all right of homestead exemption in the Property. Borrowers hereby waive all right of redemption on behalf of Borrowers and on behalf of all other persons acquiring any interest or title in the Property subsequent to the date of this Deed of Trust, except decree or judgment creditors of Borrowers.

19. **Governing Law; Severability**. This Deed of Trust shall be governed by and construed in accordance with the internal laws of the State of Illinois except that the provisions of the laws of the jurisdiction in which the Land is located shall be applicable to the creation, perfection and enforcement of the lien created by this Deed of Trust. The invalidity, illegality or unenforceability of any provision of this Deed of Trust shall not affect or impair the validity, legality or enforceability of the remainder of this Deed of Trust, and to this end, the provisions of this Deed of Trust are declared to be severable.

20. **Notice**. Notices shall be given under this Deed of Trust in conformity with the terms and conditions of the Loan Agreement and in conformity with applicable law.

21. **Successors and Assigns Bound; Joint and Several Liability; Agents; Captions**. The covenants and agreements contained in the Loan Documents shall bind, and the rights thereunder shall inure to, the respective successors and assigns of Agent, Lender and Borrowers, subject to the transfer restrictions set forth in the Loan Agreement. All covenants and agreements of Borrowers shall be joint and several. In exercising any rights under the Loan Documents or taking any actions provided for therein, Agent may act through its employees, agents or independent contractors as authorized by Agent. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

22. **Release**. Upon payment in full of all Indebtedness and the performance of all Obligations, Agent shall instruct Trustee to reconvey this Deed of Trust. In such event, Trustee shall deliver to Borrowers in recordable form, all such documents as shall be necessary to release the Property from the liens, security interests, conveyances, and assignments created or evidenced by this Deed of Trust. The recitals in such reconveyance of any matters or facts shall be conclusive as to the accuracy thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto". Borrowers shall pay Agent's and Trustee's reasonable costs incurred in releasing or assigning this Deed of Trust and in preparing and filing any terminations or assignments of financing statements related thereto, as a condition to Trustee's obligation to deliver the same.

23. **Loss of Note**. Upon notice from Agent of the loss, theft, or destruction of the Note and upon receipt of an affidavit of lost note and an indemnity reasonably satisfactory to Borrowers from Agent, or in the case of mutilation of the Note (or any of them), upon surrender of the mutilated Note, Borrowers shall make and deliver a new note of like tenor in lieu of the then to be superseded Note (or any of them). Any one or more of the financial institutions which are or become a party to the Loan Agreement as Lenders may from time to time be replaced and,

**DEED OF TRUST – Page 16**
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

06  0113003

1/18/06

*18*

accordingly, the Note may from time to time be replaced, provided that the terms of the Note or Notes following such replacement, including the principal amount evidenced thereby, shall remain the same. As the indebtedness secured by this Deed of Trust shall remain the same, such replacement of the Note shall not be construed as a novation and shall not affect, diminish or abrogate Borrowers' liability under this Deed of Trust or the priority of this Deed of Trust.

24. **Further Assurances.** Borrowers agree to execute any further documents, and to take any further actions reasonably requested by Agent to evidence or perfect the security interests granted herein, to maintain the first priority of the security interests, and to effectuate the rights specifically granted to Agent and Lender hereunder.

25. **Subrogation.** Agent is hereby subrogated (a) to the lien(s) of each and every mortgage, deed of trust, lien or other encumbrance on all or any part of the Property which is fully or partially paid or satisfied out of the proceeds of the Indebtedness, and (b) to the rights of the owner(s) and holder(s) of any such mortgage, deed of trust, lien or other encumbrance. The respective rights under and priorities of all such mortgages, deeds of trust, liens or other encumbrances shall be preserved and shall pass to and be held by Agent as additional security for the Indebtedness, to the same extent as if such rights and priorities had been duly assigned by separate instrument of assignment and notwithstanding that the same may have been cancelled and satisfied of record. Notwithstanding the foregoing, Agent agrees that only the terms and provisions set forth in this Deed of Trust and the other Loan Documents shall govern and control Borrowers' rights and obligations hereunder and thereunder.

26. **Time of Essence.** Time is of the essence of this Deed of Trust and the performance of each of the covenants and agreement contained herein.

27. **Venue.** BORROWERS HEREBY CONSENT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS AND IRREVOCABLY AGREES THAT, SUBJECT TO AGENT'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS DEED OF TRUST SHALL BE LITIGATED IN SUCH COURTS. BORROWERS EXPRESSLY SUBMIT AND CONSENT TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. BORROWERS HEREBY WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON BORROWERS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWERS, AT THE ADDRESS SET FORTH IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.

28. **Jury Trial Waiver.** BORROWERS, AND AGENT AND LENDER BY THEIR ACCEPTANCE OF THIS DEED OF TRUST, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS DEED OF TRUST AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY BORROWERS, LENDER AND AGENT, AND BORROWERS ACKNOWLEDGE THAT NEITHER AGENT

**DEED OF TRUST – Page 17**
**AREI Portfolio 1**
DALLAS. 35130 00028 1436389v4

06 0113003

1/18/06

*19*

NOR LENDER, NOR ANY PERSON ACTING ON BEHALF OF AGENT OR LENDER, HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWERS, LENDER AND AGENT ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS DEED OF TRUST AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. BORROWERS, LENDER AND AGENT FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

29. **Tenants' Financial Statements.** Borrowers shall deliver to Agent, promptly upon its receipt thereof, any and all financial statements and other reports, notices or documents delivered to Borrowers by Tenants.

30. **Limitation of Liability.** Except as provided in the Agreement of Principals and the Environmental Indemnity, neither Principals, nor any constituent member, shareholder, officer, director, employee or agent of Borrowers or Principals, shall have any personal liability with respect to the payment and performance of the Note or the other obligations under the Loan Documents.

31. **Trustee's Costs and Expenses; Governmental Charges.** Borrowers shall pay all reasonable costs, fees and expenses of Trustee, its agents and counsel in connection with the performance of its duties hereunder, including without limitation the cost of any trustee's sale guaranty or other title insurance coverage ordered in connection with any foreclosure proceedings hereunder, and shall pay all taxes (except federal and state income taxes) or other governmental charges or impositions imposed by any governmental authority on Trustee by reason of its interest in the Loan Documents.

32. **Substitution of Trustee.** Beneficiary may remove Trustee at any time or from time to time for any reason (with or without cause) and appoint a successor trustee, and upon such appointment, all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall be appointed by written instrument, duly recorded in the county or counties where the Property covered hereby is located, which appointment may be executed by any authorized agent of Beneficiary or in any other manner permitted by applicable law.

33. **Indemnification of Trustee.** Except for gross negligence or willful misconduct, Trustee shall not be liable for any act or omission or error of judgment. Trustee may rely on any document believed by it in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee shall not be liable for interest thereon. Borrowers hereby indemnify Trustee against all liability and expenses which it may incur in the performance of his duties hereunder, except those arising from Trustee's gross negligence or willful misconduct.

**DEED OF TRUST – Page 18**
**AREI Portfolio I**
DALLAS 35130.00028 1436389v4

06 0113003

1/18/06

34.  **Other**.  If more than one party is named as Trustee herein, any one party may perform any obligations or duties of the Trustee herein without the joinder of any other party named herein.  Beneficiary may exercise any and all other rights, remedies and recourse granted under the Loan Documents now or hereafter existing in equity or at law for the protection and preservation of the Property.

35.  **Code of Civil Procedure Section 736**.  Lender will have all of the rights, privileges and remedies of a secured lender under Section 736 of the California Code of Civil Procedure, as amended from time to time.

36.  **Waiver of Redemption and Other Rights**.  To the full extent permitted by applicable law, Borrowers hereby covenant and agree that they shall not at any time insist upon or plead, or in any manner whatsoever claim or take any advantage of, any stay, exemption or extension law or any so-called "moratorium law" now or at any time hereafter in force, nor claim, take or insist upon any benefit or advantage of or from any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or after such sale or sales claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, to the extent such covenant and agreement is permitted by applicable law, or relating to the marshaling thereof, upon foreclosure sale or other enforcement hereof.  To the full extent permitted by applicable law, Borrowers hereby expressly waive any and all rights they may have to require that the Property be sold as separate tracts or units in the event of foreclosure.  To the full extent permitted by applicable law, Borrowers hereby expressly waive any and all rights of redemption after sale under any order or decree of foreclosure of this Deed of Trust, on their own behalf, on behalf of all Persons claiming or having an interest (direct or indirect) by, through or under Borrowers and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Borrowers and of all other Persons, are and shall be deemed to be hereby waived to the full extent permitted by applicable law.  To the full extent permitted by applicable law, Borrowers hereby waive the defense of laches and any applicable statute of limitations in connection with any action to foreclose this Deed of Trust or to obtain specific enforcement of any of the covenants or agreements of this Deed of Trust.

37.  **Certain Other California Waivers**.

(a)     If and to the extent that Trustor may be treated as or deemed to be a surety or held to have any of the rights, remedies or defense of a surety for the obligations of the other Borrower under the Loan Documents, Trustor to the fullest extent permitted by law, hereby knowingly, voluntarily and irrevocably waives and agrees not to assert or take advantage of any such rights, remedies or defenses, including, but not limited to, those available under California Civil Code Sections 2808, 2809, 2810, 2819, 2839, 2845, 2849, 2850, 2899 and 3433.

(b)     Without limiting the generality of the foregoing provisions, the validity, priority and enforceability of this Deed of Trust shall not be impaired or otherwise affected by (i) any failure of Trustor to receive notice of any default in the payment or performance of any indebtedness or other obligations of the other Borrower that are secured by this Deed of Trust;

**DEED OF TRUST** – Page 19
**AREI Portfolio I**
DALLAS: 35130 00028 1436389v4

06 0113003

34

1/18/06

21

(ii) any limitation on the personal liability of Trustor or other Borrower for any indebtedness or obligation secured by this Deed of Trust; (iii) any failure of Trustor to receive notice of, or consent to, any extension, alteration, impairment or suspension of any indebtedness or other obligations that are secured by this Deed of Trust; (iv) any failure of Trustor to receive notice of, or consent to, the release by Lender of any other security for, or guaranty of, any indebtedness or obligations that are secured by this Deed of Trust; (v) any failure of Lender to enforce any other right or remedy, or to resort to any other security or guaranty, before enforcing Lender's foreclosure, receivership and other remedies under this Deed of Trust; and (vi) any election of remedies by Lender that impairs or destroys any right or remedy of Trustor against the other Borrower including any destruction of the right of Trustor to seek reimbursement from the other Borrower based on the principle of equitable subrogation as a result of Lender's election to foreclose under this Deed of Trust by a nonjudicial trustee's sale.

(c)    California courts have held that a lender's election to foreclose under its deed of trust by a nonjudicial trustee's sale and the resulting destruction of a surety's ability to obtain reimbursement from the borrower affords the surety a defense to the lender's enforcement of the guaranty.  Trustor (should it be deemed a surety) hereby knowingly, voluntarily and irrevocably waives any such defense to the extent that it might be available to Trustor.

(d)    Trustor hereby further knowingly, voluntarily and irrevocably waives, until the Indebtedness is paid in full: (i) any claim against the Other Borrower Party including any equitable claim for reimbursement based on any loss suffered by Trustor as a result of Lender's enforcement of its remedies under this Deed of Trust; and (ii) any right to receive, resort to, or in any way have the benefit of any other security or guaranty held by Lender.

(e)    Trustor freely, irrevocably and unconditionally waives and relinquishes any defense based on CCP Section 580d (as interpreted in Union Bank v. Gradsky, 265 Cal. App. 2d 40, 71 C.R. 64 (1968)) and agrees that Trustor will not assert such a defense in any action or proceeding that Lender may commence and acknowledge and agree that Lender is relying on this waiver.

(f)    Trustor further waives all rights and defenses arising out of an election of remedies by Lender, even though such election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed rights of subrogation and reimbursement of Trustor against each other by the operation of CCP Section 580d or otherwise.

(g)    Trustor further waives and relinquishes all rights that may be available to Trustor under any California law or judicial decision, including CCP Sections 580a and 726(b), to limit the amount of any judgment that may be obtained against Trustor hereunder to not more than the amount by which any unpaid indebtedness exceeds the fair market value or fair value of any real or personal property security for any indebtedness, including without limitation, all rights to an appraisement of, judicial or other hearing on, or other determination by Trustor of the value of any such security.

(h)    Without diminishing or otherwise detracting from the waivers by Trustor set forth herein, Trustor acknowledges and agrees that the rights and defenses waived by Trustor herein include any right or defense that Trustor may have or be entitled to assert based upon or

**DEED OF TRUST** – **Page 20**
**AREI Portfolio I**

06  0113003

1/18/06

22

arising out of CCP Sections 580a, 580b, 580d, or 726 or, until the Indebtedness is paid in full, California Civil Code Section 2848, and that Trustor is aware of and have been advised by legal counsel regarding the anti-deficiency laws and one action rule and other principles embodied in such statutes.

(i)    Trustor acknowledges that it has been made aware of the provisions of California Civil Code Section 2856, have read and understand the provisions of that statute, have been advised by legal counsel as to the scope, purpose and effect of that statute, and based thereon, and without limiting the foregoing waivers, Trustor agrees to waive all suretyship rights and defenses described in California Civil Code Section 2856(a).  Without limiting any other waivers contained herein, Trustor hereby gives the following waivers pursuant to California Civil Code Sections 2856(c) and 2856(d):

(i)    Trustor waives all rights and defenses that Trustor may have because of the debt of Trustor is secured by real property.  This means, among other things,:

(1)    Lender may collect from Trustor (should it be deemed to be a surety) without first foreclosing on any real or personal property pledged by Trustor.

(2)    If Lender forecloses on any real property collateral pledged by Trustor:

A.    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

B.    Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor (should it be deemed to be a surety) may have to collect from the other Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debt of Trustor and the other Borrower is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon CCP Sections 580a, 580b, 580d or 726.

(ii)    Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the rights of subrogation and reimbursement that Trustor has against the other Borrower by the operation of CCP Section 580d or otherwise.

The continuing validity and enforceability of the covenants and waivers of Trustor in this Section 37 shall not be impaired or otherwise affected by any election of Lender, in its discretion, to give any particular notice to Trustor or to solicit any particular consent of Trustor that Lender is not obligated to give or solicit by reason of the provisions of this Section 37.

**DEED OF TRUST** – Page 21
**AREI Portfolio I**
DALLAS\ 35130.00028\ 1436389v4

06  0113003

1/18/06

23

IN WITNESS WHEREOF, Borrowers have executed this Deed of Trust or has caused the same to be executed by its duly authorized representatives as of the date first above written.

BORROWERS:

**NEWHALL CAPITAL RESOURCES, LLC,** a Delaware limited liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Manager

By: _____
Name: Peary D. Wood
Title: President

STATE OF: TEXAS _____ )
                                  ) ss:
COUNTY OF: DALLAS _____ )

    On January 5, 2006, before me, Rick L Hagerich , Notary Public, personally appeared Peary D. Wood , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the person(s) acted executed the instrument.

RICK L. HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_____
Notary Public

**[Signatures continue on the following page]**

1/18/06

24

**AREI NEWHALL 1, LLC,** a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _(signature)_
Name: _Peary D. Wood_
Title: _President_

STATE OF: _California_  )
                        ) ss:
COUNTY OF: _Shasta_     )

On December _28_, 2005, before me, _Caren C. Russell_, Notary Public,
personally appeared _Peary D. Wood_, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_Caren C. Russell_
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

06 0113003

38

1/18/06

25

**AREI NEWHALL 2, LLC,** a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _____
Name: _Peary D. Wood_
Title: _President_

STATE OF: _California_ )
) ss:
COUNTY OF: _Shasta_ )

On December _28_, 2005, before me, _Caren C. Russell_, Notary Public,
personally appeared _Peary D. Wood_, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_Caren C. Russell_
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

06 0113003

39

1/18/06

26

**AREI NEWHALL 3, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: California                    )
                                        ) ss:
COUNTY OF: Shasta                       )

On December 28, 2005, before me, CAREN C. Russell, Notary Public,
personally appeared Peary D. Wood, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

Caren C. Russell
Notary Public

[Signatures continue on the following page]

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130 00028 1436389v4

06 0113003

40

1/18/06

27

**AREI NEWHALL 4, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_____
Title: _President_____

STATE OF: _California_____  )
                                       ) ss:
COUNTY OF: _Shasta_____  )

   On December 28, 2005, before me, _CAREN C. RUSSELL_, Notary Public,
personally appeared _Peary D. Wood_____, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

                                   _Caren C. Russell_____
                                   Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

              [Signatures continue on the following page]

**DEED OF TRUST** – Signature Page
**AREI Portfolio 1**
DALLAS: 35130 00028 1436389v4

                    06  0113003

41

1/18/06

28

**AREI NEWHALL 5, LLC**, a Delaware limited
liability company

By: Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: California                    )
                                        ) ss:
COUNTY OF: Shasta                       )

    On December 28, 2005, before me, CAREN C. Russell , Notary Public,
personally appeared  Peary D. Wood , personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_____
Caren C. Russell
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

06  0113003

42

1/18/06

29

**AREI NEWHALL 6, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: California          )
                              ) ss:
COUNTY OF: Shasta             )

On December 28, 2005, before me, CAREN C. RUSSELL, Notary Public,
personally appeared Peary D. Wood, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC · CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

Caren C. Russell
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

06  0113003

43

1/18/06

30

AREI NEWHALL 7, LLC, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_____
Title: _President_____

STATE OF: _California_____ )
                                   ) ss:
COUNTY OF: _Shasta_____ )

On December 28, 2005, before me, _Caren C. Russell_____, Notary Public,
personally appeared _Peary D. Wood_____, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_Caren C. Russell_____
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.0002B 1436389v4

06 0113003

44

1/18/06

31

AREI NEWHALL 8, LLC, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: California )
                     ) ss:
COUNTY OF: Shasta )

On December 28, 2005, before me, CAReN C. Russell, Notary Public,
personally appeared Peary D. Wood, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC · CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_____
Notary Public

[Signatures continue on the following page]

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS. 35130.00028 1436389v4

06 0113003

45

1/18/06

.32

**AREI NEWHALL 10, LLC,** a Delaware limited liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_____
Title: _President_____

STATE OF: _California_____ )
                                ) ss:
COUNTY OF: _Shasta_____ )

On December _28_, 2005, before me, _CAREN C. RUSSELL_____, Notary Public, personally appeared _Peary D. Wood_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_____
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

06  0113003

46

1/18/06

33

**AREI NEWHALL 12, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: _California_____ )
                                    ) ss:
COUNTY OF: _Shasta_____ )

On December 28, 2005, before me, _CAREN C. Russell_, Notary Public,
personally appeared _Peary D. Wood_, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

_Caren C. Russell_
Notary Public

> CAREN C. RUSSELL
> COMM. NO. 1555019
> NOTARY PUBLIC-CALIFORNIA
> SHASTA COUNTY
> MY COMMISSION EXPIRES
> MARCH 11, 2009

[Signatures continue on the following page]

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS: 35130 00028 1436389v4

06 0113003

47

1/18/06

34

**AREI NEWHALL 13, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _____
Title: _____

STATE OF: _California_____ )
                                       ) ss:
COUNTY OF: _Shasta_____ )

    On December _28_, 2005, before me, _CAREN C. RUSSELL_, Notary Public,
personally appeared _Pearl D Wood_____, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

_____
Notary Public

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS.35130.00028:1436389v4

06 0113003

48

1/18/06

35

**AREI NEWHALL 14, LLC**, a Delaware limited
liability company

By:　Capital Resources Fund, LLC,
　　　a California limited liability company,
　　　its Vice President

By: _____

Name: _Peary D. Wood_____

Title: _President_____

STATE OF: _TEXAS_____　)
　　　　　　　　　　　　　　　　　 ) ss:
COUNTY OF: _DALLAS_____　)

　　　On January 5, 2006, before me, _Rick L. Hagerich_, Notary Public,
personally appeared _Peary D. Wood_____, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.



RICK L. HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_____
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST** – Signature Page
**AREI Portfolio 1**
DALLAS: 35130.00028 1436389v4

06 0113003

49

1/18/06

36

AREI NEWHALL 15, LLC, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_____
Title: _President_____

STATE OF: _TEXAS_____ )
                                  ) ss:
COUNTY OF: _DALLAS_____ )

     On January _5_, 2006, before me, _Rick L Hagerich_____, Notary Public,
personally appeared _Peary D. Wood_____, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.

RICK L. HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_____
Notary Public

**[Signatures continue on the following page]**

**DEED OF TRUST – Signature Page**
**AREI Portfolio I**
DALLAS: 35130.00028: 1436389v4

06  0113003

50

1/18/06

3)

**AREI NEWHALL 17, LLC,** a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: Texas )
) ss:
COUNTY OF: Dallas )

On January 5, 2006, before me, Rick L. Hagerich, Notary Public,
personally appeared Peary P. Wood, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the
person(s) acted executed the instrument.



RICK L. HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_____
Notary Public

**DEED OF TRUST** – Signature Page
**AREI Portfolio I**
DALLAS 35130.00028 1436389v4

06  0113003

51

1/18/06

38

### SCHEDULE I

### LIST OF BORROWERS

NEWHALL CAPITAL RESOURCES, LLC, a Delaware limited liability company
AREI NEWHALL 1, LLC, a Delaware limited liability company
AREI NEWHALL 2, LLC, a Delaware limited liability company
AREI NEWHALL 3, LLC, a Delaware limited liability company
AREI NEWHALL 4, LLC, a Delaware limited liability company
AREI NEWHALL 5, LLC, a Delaware limited liability company
AREI NEWHALL 6, LLC, a Delaware limited liability company
AREI NEWHALL 7, LLC, a Delaware limited liability company
AREI NEWHALL 8, LLC, a Delaware limited liability company
AREI NEWHALL 10, LLC, a Delaware limited liability company
AREI NEWHALL 12, LLC, a Delaware limited liability company
AREI NEWHALL 13, LLC, a Delaware limited liability company
AREI NEWHALL 14, LLC, a Delaware limited liability company
AREI NEWHALL 15, LLC, a Delaware limited liability company
AREI NEWHALL 17, LLC, a Delaware limited liability company

**06  0113003**

1/18/06

39

# EXHIBIT A
# LEGAL DESCRIPTION

**Stanford House, Los Angeles, California**
Lots 121, 122 and 123 of Tract No. 8439, in the City of Los Angeles, County of Los Angeles, State of California as per map recorded in Book 100 Page(s) 93 to 96 inclusive of maps, in the Office of the County Recorder of said county.

**Cambridge House, Los Angeles, California**
Lots 124, 125 and 126 of Tract No. 8439, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 100 Page (s) 93 to 96 inclusive of maps, in the Office of the County Recorder of said county.

**Capri Retirement Villa, Santa Clarita, California**
Parcel 1:
That portion of Lot 3 in Section 4, Township 3 North, Range 16 West, San Bernardino Meridian, in the City of Santa Clarita, County of Los Angeles, State of California, according to the Official Plat of said land filed in the district land office on March 18, 1976, described as follows:

Beginning at the southwest corner of the land described in the deed to Los Angeles District Advisory Board, a religious corporation, recorded on December 5, 1961 as Instrument No. 660, in Book d1439 Page 994, Official Records of said county, said corner being a point in the northerly line of Newhall Pico Canyon Road, 60 feet wide, as described in the deed to the County of Los Angeles, recorded on January 17, 1930 as Instrument No. 1434, in Book 9712 Page 68 Official Records of said county; thence along said northerly line south 85° 55' 55" west 10.00 feet; thence parallel with the westerly line of the land described in said deed to the Los Angeles Advisory Board, north 4° 04' 05" west 248.75 feet, more or less, to the northerly line of said section; thence along said last mentioned northerly line, north 88° 05' 00" east 10.12 feet, more or less, to the northwest corner of the land described in said deed to Los Angeles Advisory Board; thence along the westerly line of the land described in said last mentioned deed, south 4° 04' 05" east 248.38 feet to the Point of Beginning.

Parcel 2:
That portion of Lot 3 in Section 4, Township 3 North, Range 16 West, San Bernardino Meridian, in the City of Santa Clarita, County of Los Angeles, State of California, according to the Official Plat of said land filed in the district land office on March 18, 1976, described as follows:

Beginning at the southwest corner of the land described in the deed to William Mayhue, et al., recorded in Book 10271 Page 312, Official Records, in the Office of the County Recorder of said county, said corner being a point in the northerly line of Newhall Pico Canyon Road, 60 feet wide, as described in the deed to the County of Los Angeles, recorded on January 17, 1930 as Instrument No. 1434 in Book 9712 Page 68 Official Records of said county; thence along said northerly line, south 85° 55' 55" west 140 feet; thence parallel with the westerly line of the land described in said deed to Mayhue north 4° 04' 05" west 248.38 feet to the northerly line of said section; thence along said last mentioned northerly line, north 88° 05' 00" east 140.12 feet to the northwest corner of the land described in said deed to Mayhue; thence along the westerly line of the land described in said deed to Mayhue, south 4° 04' 05" east 243.12 feet to the Point of Beginning.

**DEED OF TRUST – Exhibit A**
**AREI Portfolio I**
DALLAS 35130 00028 1436389v4

06  0113003

53

# EXHIBIT "B"

Loan No. 07-0004232

## PROMISSORY NOTE

$17,200,000.00                                                       January 12, 2006

1.     **Promise to Pay**.

        FOR VALUE RECEIVED, the parties listed on Schedule I attached hereto (each a
"**Borrower**" and collectively the "**Borrowers**") whose address is c/o Asset Real Estate Investment
Co., 443 Redcliff Drive, Suite 100, Redding, California 96002 promise to pay to the order of
GENERAL ELECTRIC CAPITAL CORPORATION, INC., a Delaware corporation, and its
successors and assigns (in its individual capacity, "**GECC**", and as agent for Lenders (as defined
below), "**Agent**"), the sum of Seventeen Million Two Hundred Thousand and No/100 Dollars
($17,200,000.00), together with all other amounts added thereto pursuant to this Note or otherwise
payable to GECC under the Loan Documents (as hereinafter defined), including, but not limited to,
any Prepayment Premium or Make-Whole Breakage Amount as defined and set forth in the Loan
Agreement (as hereinafter defined) (or so much thereof as may from time to time be outstanding),
together with interest thereon as hereinafter set forth, all payable in lawful money of the United
States of America. Payments shall be made at the offices of Agent at GEMSA, File 59229, Los
Angeles, California 90074-9229 (or such other address as Agent may hereafter designate in writing
to Borrowers). Except as otherwise provided herein, capitalized terms used in this Note shall have
the same meanings as are assigned to such terms in the Loan Agreement.

        This Note is secured by, among other things, those certain Security Documents
encumbering, among other things, the Projects. This Note, the Security Documents, the Loan
Agreement of even date herewith among GECC and the other financial institutions who are or
hereafter become parties to the Loan Agreement (together with GECC, collectively or individually,
as the context may require, "**Lender**"), Borrowers and Agent (as amended from time to time, the
"**Loan Agreement**") and any other documents evidencing or securing the Loan or executed by any
Person in connection therewith on or after the date hereof, and any modification, renewal or
extension of any of the foregoing are collectively called the "**Loan Documents**". Reference is
hereby made to the Loan Agreement for a statement of all of the terms and conditions under which
the Loan evidenced hereby is made and to be repaid.

2.     **Payments**.

        The principal amount of the indebtedness evidenced hereby shall be payable in the
amounts and on the dates specified in the Loan Agreement, the terms of which are hereby
incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid
in full at such interest rates and at such times, and pursuant to such calculations, as are specified in
the Loan Agreement. If any payment on this Note becomes due and payable on a day other than a
Business Day, the maturity thereof shall be extended to the next succeeding Business Day, and,
with respect to payments of principal, interest thereon shall be payable at the then applicable rate

<u>**PROMISSORY NOTE**</u> – Page 1
**AREI Portfolio I**
DALLAS: 35130 00028: 1436377v4

during such extension. Payments will be applied in accordance with the terms of the Loan Agreement. Borrowers may prepay this Note, if at all, only to the extent permitted by and in accordance with the provisions of the Loan Agreement, including the payment of any applicable Prepayment Premium and Make-Whole Breakage Amount then due.

3.   **Default.**

Upon and after the occurrence of any Event of Default that remains uncured, this Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

4.   **APPLICABLE LAW; SEVERABILITY.**

THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF ILLINOIS, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES. THE INVALIDITY, ILLEGALITY OR UNENFORCEABILITY OF ANY PROVISION OF THIS NOTE SHALL NOT AFFECT OR IMPAIR THE VALIDITY, LEGALITY OR ENFORCEABILITY OF THE REMAINDER OF THIS NOTE, AND TO THIS END, THE PROVISIONS OF THIS NOTE ARE DECLARED TO BE SEVERABLE.

5.   **Waiver.**

Each Borrower, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Agent. Each Borrower, for itself and all endorsers, guarantors and sureties of this Note, including but not limited to Principals, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Agent with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their respective heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Borrowers or to any endorser, guarantor or surety and without affecting the liability of any of them.

6.    **Miscellaneous.**

    6.1.    **Amendments.**

This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by Agent.

    6.2.    **Lawful Rate of Interest.**

In no event whatsoever shall the amount of interest paid or agreed to be paid pursuant to this Note or any of the Loan Documents exceed the highest lawful rate of interest permissible under applicable law.  If, from any circumstances whatsoever, fulfillment of any provision of this Note and the other Loan Documents shall involve exceeding the lawful rate of interest which a court of competent jurisdiction may deem applicable hereto ("**Excess Interest**"), then _ipso facto_, the obligation to be fulfilled shall be reduced to the highest lawful rate of interest permissible under such law and if, for any reason whatsoever, Agent or Lender shall receive, as interest, an amount which would be deemed unlawful under such applicable law, such interest shall be applied to the Loan (whether or not due and payable), and not to the payment of interest, or refunded to Borrowers if such Loan has been paid in full.  No Borrower, Principal or guarantor, endorser or surety nor any of their respective heirs, legal representatives, successors or assigns shall have any action against Agent or Lender for any damages whatsoever arising out of the payment or collection of any such Excess Interest.

    6.3.    **Captions.**

The captions of the Paragraphs of this Note are for convenience of reference only and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

    6.4.    **Notices.**

Notices shall be given under this Note in conformity with the terms and conditions of the Loan Agreement.

    6.5.    **Joint and Several.**

The obligations of Borrowers under this Note shall be joint and several obligations of Borrowers and of each Borrower, if more than one, and of each Borrower's heirs, personal representatives, successors and assigns.

    6.6.    **Time of Essence.**

Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

**PROMISSORY NOTE** – Page 3
**AREI Portfolio I**
DALLAS: 35130.00028. 1436377v4

7.    <u>**Sale of Loan**</u>.

  Agent or Lender, at any time and without the consent of any Borrower, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the Loan, this Note, the Security Documents and the other Loan Documents, any guaranties given in connection with the Loan and any collateral given to secure the Loan.

8.    <u>**Limitation of Liability**</u>.

  Except as provided in the Agreement of Principals and the Environmental Indemnity, neither any Principal, nor any constituent member, partner, shareholder, officer, director, employee or agent of Borrowers or Principals shall have any personal liability with respect to the payment of performance of this Note or the other obligations under the Loan Documents.

**[Signatures Begin on Next Page]**

IN WITNESS WHEREOF, Borrowers have executed this Senior Note or has caused the same to be executed by its duly authorized representatives as of the date first set forth above.

BORROWERS:

**NEWHALL CAPITAL RESOURCES, LLC**, a Delaware limited liability company

By:   Capital Resources Fund, LLC,
       a California limited liability company,
       its Manager

By: _____
       Name: Peary D. Wood
       Title: President

**PROMISSORY NOTE** – Signature Page
**AREI Portfolio 1**
DALLAS: 35130 00028: 1436377v4

59

**AREI NEWHALL 1, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By: _____
       Name: Peary D. Wood
       Title: President

**AREI NEWHALL 2, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By: _____
       Name: Peary D. Wood
       Title: President

**AREI NEWHALL 3, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a limited liability company,
       its Vice President

    By:_____
    Name: Peary D. Wood
    Title: President

**AREI NEWHALL 4, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By:_____
Name: Peary D. Wood
Title: President

**AREI NEWHALL 5, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By:    _____
Name: Peary D. Wood
Title: President

**AREI NEWHALL 6, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By:    _____
       Name: Peary D. Wood
       Title: President

**AREI NEWHALL 7, LLC,** a Delaware limited liability company

By:    Capital Resources Fund, LLC,
      a California limited liability company,
      its Vice President

      By: _____
      Name: Peary D. Wood
      Title: President

**AREI NEWHALL 8, LLC**, a Delaware limited liability company

By:    Capital Resources Fund, LLC,
        a California limited liability company,
        its Vice President

        By:_____
        Name: Peary D. Wood
        Title: President

**AREI NEWHALL 10, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By: _____
       Name: Peary D. Wood
       Title: President

**AREI NEWHALL 12, LLC,** a Delaware limited
liability company

By:      Capital Resources Fund, LLC,
         a California limited liability company,
         its Vice President

         By: _____
         Name: Peary D. Wood
         Title: President

**PROMISSORY NOTE** – Signature Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436377v4

69

**AREI NEWHALL 13, LLC,** a Delaware limited liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

By: _____
Name: Peary D. Wood
Title: President

**AREI NEWHALL 14, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By: _____
       Name: Peary D. Wood
       Title: President

**PROMISSORY NOTE** – Signature Page
**AREI Portfolio I**
DALLAS:35130.00028:1436377v4

71

**AREI NEWHALL 15, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By: _____
       Name: Peary D. Wood
       Title: President

**AREI NEWHALL 17, LLC,** a Delaware limited
liability company

By:    Capital Resources Fund, LLC,
       a California limited liability company,
       its Vice President

       By:_____
       Name: Peary D. Wood
       Title: President

73

## SCHEDULE I

### List of Borrowers

NEWHALL CAPITAL RESOURCES, LLC, a Delaware limited liability company

AREI NEWHALL 1, LLC, a Delaware limited liability company

AREI NEWHALL 2, LLC, a Delaware limited liability company

AREI NEWHALL 3, LLC, a Delaware limited liability company

AREI NEWHALL 4, LLC, a Delaware limited liability company

AREI NEWHALL 5, LLC, a Delaware limited liability company

AREI NEWHALL 6, LLC, a Delaware limited liability company

AREI NEWHALL 7, LLC, a Delaware limited liability company

AREI NEWHALL 8, LLC, a Delaware limited liability company

AREI NEWHALL 10, LLC, a Delaware limited liability company

AREI NEWHALL 12, LLC, a Delaware limited liability company

AREI NEWHALL 13, LLC, a Delaware limited liability company

AREI NEWHALL 14, LLC, a Delaware limited liability company

AREI NEWHALL 15, LLC, a Delaware limited liability company

AREI NEWHALL 17, LLC, a Delaware limited liability company