08 C 1199   JUDGE LEFKOW
MAGISTRATE JUDGE MASON

# EXHIBIT "D"

**This page is part of your document - DO NOT DISCARD**

**06 0113005**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
01/18/06 AT 08:00am**

## TITLE(S) :



L E A D   S H E E T

FEE

| FEE $ | 93 O |
| DAF $ | 6 |
| C-20 | |

D.T.T.

**CODE
20**

**CODE
19**

**CODE
9**

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.    **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

1/18/06

**PLEASE COMPLETE THIS INFORMATION**

06  0113005

**RECORDING REQUESTED BY:**
UNITED TITLE COMPANY

**AND WHEN RECORDED MAIL TO:**
JANIS H. LOEGERING, ESQ
LOCKE LIDDELL & SAPP LLP
2200 ROSS AVENUE, SUITE 2200
DALLAS TEXAS, 75201-6776
ORDER NO. 20500643
APN 4333-12-50
4333-11-25
2851-14-8

THIS SPACE FOR RECORDER'S USE ONLY
*CoLLATERAL*
ASSIGNMENT OF RENTS AND LEASES
AND SECURITY  AGREEMENT

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

1/18/06

Loan No. 07-0004232

## COLLATERAL ASSIGNMENT OF LIENS AND SECURITY INTERESTS

This COLLATERAL ASSIGNMENT OF LIENS AND SECURITY INTERESTS (this "**Assignment**") is executed effective as of the _13_ day of January, 2006, by the Parties listed on Schedule 1 attached hereto (collectively, the "**Assignor**") in favor of **GENERAL ELECTRIC CAPITAL CORPORATION**, a Delaware corporation, as Agent and, in its individual capacity as a Lender, "**GECC**", and the other financial institutions who are or become parties to said Loan Agreement as lenders (collectively with GECC, the "**Assignee**"). Each capitalized term used but not otherwise defined herein shall have the meaning given to such term in the Loan Agreement described below.

### R E C I T A L S :

A.     Assignor, Agent and Assignee are parties to that certain Loan Agreement dated of even date herewith (as amended from time to time, the "**Loan Agreement**") pursuant to which Assignee agreed, subject to certain terms and conditions, to make a loan to Assignor in the amount of $17,200,000 (the "**Loan**"), which Loan is secured by, inter alia, that certain Deed of Trust/Assignment of Rents, Security Agreement and Fixture Filing dated of even date herewith, executed by Assignor for the benefit of Assignee, and recorded or to be recorded in the Real Property Records of Los Angeles County, California, encumbering the real property more particularly described on <u>Exhibit A</u> attached hereto and incorporated herein (the "**Property**") (said Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing and as renewed, extended and amended from time to time, the "**Deed of Trust**"); and

B.     Pursuant to the Loan Agreement, Assignor has agreed to collaterally assign to Agent for the benefit of Assignee, as security for the Loan, the liens and security interests granted in favor of Assignor by Master Tenant to secure Master Tenant's obligations under the Master Lease pursuant to that certain Assignment of Rents and Leases and Security Agreement (the "**Assignment and Security Agreement**") in order to secure the payment and satisfaction of the Indebtedness (hereinafter defined).

### A G R E E M E N T :

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS that for and in consideration of the making of the Loan to Assignor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Assignor has ASSIGNED, PLEDGED, SOLD, TRANSFERRED, CONVEYED, ENDORSED and DELIVERED, and by these presents does hereby ASSIGN, PLEDGE, SELL, TRANSFER, CONVEY, ENDORSE and DELIVER unto Agent for the benefit of Assignee, and GRANT a SECURITY INTEREST in favor of Agent for the benefit of Assignee in, the following (collectively, the "**Collateral**"):

a.     The Assignment and Security Agreement;

<u>Collateral Assignment of Liens and Security Interests</u> – Page 1
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

06 0113005

1/18/06

4

b.    All of the rights, titles, interests, liens, privileges, claims, benefits, demands, equities, guaranties, pledges, security interests and assignments now or hereafter owned, held, accruing and to accrue to, and for the benefit of, Assignor in respect of the Assignment and Security Agreement and all rights arising under or in any way accruing or to accrue to the benefit of Assignor, in any fashion in respect of the Assignment and Security Agreement, and together with all proceeds, monies, payments, income, collections and benefits from or attributable or accruing thereto, and all other agreements now existing or hereafter arising that provide collateral security or financial or other support for the performance of the obligations of the Master Tenant under the Master Lease; and

c.    any and all proceeds of any of the foregoing.

1.    Representations and Warranties. Assignor hereby represents and warrants to Assignee and Agent as of the date hereof that:

a.    Assignor is the legal and equitable owner and holder of good and marketable title to the Collateral free of any adverse claim and free of any security interest or encumbrance except only for the security interest granted hereby in the Collateral. Assignor agrees to defend the Collateral and its proceeds against all claims and demands of any person at any time claiming the Collateral, its proceeds or any interest in either. Assignor has not heretofore executed any financing statement directly or indirectly affecting the Collateral or any part of it, and no such financing statement signed by Assignor is now on file in any public office.

b.    All of Assignor's books and records with regard to the Collateral are maintained and kept at the address of Assignor set forth in this Assignment.

c.    Assignor's execution, delivery and performance of this Assignment does not and will not require (i) any consent of any other person or entity other than such as have been obtained, or (ii) any consent, license, permit, authorization or other approval (including foreign exchange approvals) of any court, arbitrator, administrative agency or other governmental authority, or any notice to, exemption by, any registration, declaration or filing with or the taking of any other action in respect of, any such court, arbitrator, administrative agency or other governmental authority.

d.    Neither execution or delivery of this Assignment, nor the fulfillment of or compliance with the terms and provisions hereof or thereof, will (i) violate any constitutional provision, law or rule, or any regulation, order or decree of any governmental authority or the basic organizational documents of Assignor, or (ii) conflict with or result in a breach of the terms, conditions or provisions of, or cause a default under, any agreement, instrument, franchise, license or concession to which Assignor is a party or bound.

e.    Assignor has duly and validly executed, issued and delivered this Assignment. This Assignment is a party is Assignor's valid and legally binding obligation, enforceable in accordance with its terms, subject to principles of equity and

Collateral Assignment of Liens and Security Interests – Page 2
AREI Portfolio I
DALLAS: 35130.00028: 1436397v4

06 0113005

1/18/06

applicable bankruptcy, insolvency or similar laws generally affecting the enforcement of creditors' rights.

f.    The liens and security interests of this Assignment will constitute valid and perfected first and prior liens and security interests on the Collateral, subject to no other liens, security interests or charges whatsoever.

g.    The Assignment and Security Agreement is in full force and effect and there is no agreement between Assignor and Master Tenant amending or modifying the Assignment and Security Agreement or diminishing or impairing the liability of the Master Tenant under the Master Lease to perform fully its obligations in strict accordance with the Master Lease or diminishing or impairing the obligation of any endorser, guarantor or surety for or of any of the Master Tenant's obligations under the Master Lease in strict accordance with the writings creating or evidencing the obligation of such endorser, guarantor or surety.

h.    The liens and security interests under the Assignment and Security Agreement have been duly and validly created and perfected and the instruments evidencing and creating such liens and security interests create valid first priority liens on or security interests in the property therein described, as the case may be, subject only to exceptions approved by Agent in writing, and there are no other liens or security interests encumbering the property therein described, except as approved by Agent in writing.

2.    <u>Obligations Secured</u>.    This Assignment is granted to Agent for the benefit of Assignee to secure the prompt and unconditional payment and satisfaction of the indebtedness evidenced by that certain Promissory Note dated of even date herewith, executed by Assignor and payable to the order of Agent for the benefit of Assignee, in the stated principal amount of $17,200,000 (the "**Note**") and all obligations arising under the Loan Agreement and other Loan Documents (all such obligations together with any renewals, extensions or modifications of the same are hereinafter referred to as the "**Indebtedness**").

3.    <u>Default and Remedies</u>.

a.    Upon or at any time during the existence of an Event of Default, Agent may, at its option, without notice, declare all or any part of the Indebtedness immediately due and payable, and without in any way waiving such Event of Default, may at its option without notice (except such as may be required by law) and without regard to the adequacy of the security for the Indebtedness, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, (i) sell or otherwise dispose of the Collateral, at any public or private sale or exercise any other rights or remedies permitted by the Uniform Commercial Code as adopted and in effect in the State of California and, to the extent governing, any other applicable jurisdiction (the "Code") or otherwise available to Agent at law or in equity, and/or (ii) exercise any other rights and remedies provided under the Loan Agreement or elsewhere in the Loan Documents.

06  0113005

1/18/06

b.    Without limiting the generality of the foregoing, Agent, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon Assignor or any other Person (all and each of which demands, presentments, protests, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more public or private sale or sales, at any exchange, broker's board or office of Agent or elsewhere upon such terms and conditions as it may deem commercially reasonable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. Agent shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in Assignor, which right or equity is hereby waived and released. Assignor further agrees, at Agent's request, to assemble the Collateral and make it available to Agent at places that Agent shall reasonably select.

c.    Agent's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9.207 of the Code or otherwise, shall be to deal with it in the same manner as Agent deals with similar property for its own account. Neither Agent nor Assignee, nor any of their respective directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Assignor or otherwise.

4.    Remedies Cumulative. Agent, in addition to the rights and remedies provided for in the preceding paragraph, shall have all the rights and remedies of a secured party under the Code including, but not limited to, the right of private sale, and Agent (on behalf of Assignee) shall be entitled to avail itself of all such other rights and remedies as may now or hereafter exist at law or in equity for the collection of the Indebtedness and the foreclosure of the security interest created hereby, and the exercise by Agent (on behalf of Assignee) of any remedy to which Agent is entitled shall not prevent the concurrent employment of any other appropriate remedy or remedies. The rights, powers, authorities, remedies, interests and benefits conferred upon Agent for the benefit of Assignee as provided in this Assignment are intended to supplement, and be in addition to (and shall not in any way replace, supersede, amend, limit or restrict), the rights, powers, authorities, remedies, interests and benefits conferred by law or in any other document or agreement, including, without limitation, the Loan Agreement and the other Loan Documents. The rights, powers and remedies of Agent hereunder are not conditional or contingent on any attempt by Agent to exercise any such right, power or remedy under any other document or agreement.

5.    Release. The term of this Assignment shall be until the Note, together with all interest thereon, and all other indebtedness secured by the Deed of Trust shall have been fully paid

1/18/06

and satisfied. Any release of the Deed of Trust in full shall automatically cancel, release, and reassign to Borrower all interests conveyed herein.

6.    Notices. The requirement of reasonable notice to Assignor of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made, shall be met if such notice is given at least ten (10) days prior to the date of such intended disposition, to the address of Assignor designated in Section 11.1 of the Loan Agreement; provided, that if any of the Collateral threatens to decline speedily in value or is of the type customarily sold on a recognized market, Agent may sell or otherwise dispose of the Collateral without notification, advertisement or other notice of any kind. Any notice or demand hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been effective and given and received as provided in Section 11.1 of the Loan Agreement.

7.    Further Assurances. In furtherance of this Assignment, immediately on Agent's demand, and at Assignor's expense, Assignor shall do any act or execute any additional documents or re-execute any document or instrument reasonably required by Agent to establish or confirm this Assignment or any provision hereof, to protect the interests of Assignee herein or to enable Agent to exercise and enforce its rights and remedies hereunder on behalf of Assignee.

8.    Binding Effect. This Assignment shall (i) be binding on Assignor and its representatives and permitted successors and assigns, and (ii) inure, together with all rights and remedies of Assignee hereunder, to the benefit of Assignee and Agent and their respective successors, transferees and assigns.

9.    Modifications, Amendments, Etc. No modification, waiver, amendment, discharge or change of, nor consent to the departure from, any provision hereof shall be effective unless it is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge, change or consent is sought, and then such modification, waiver, amendment, discharge, change or consent shall be effective only in the specific instance and for the specific purpose for which given.

10.    Severability. A determination that any portion of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and the determination that the applicability of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. Any such provision shall be fully severable, and this Assignment shall be construed and enforced as if such provision had never comprised a part thereof. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Assignment a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

11.    Counterparts. This Assignment may be executed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute but one agreement binding on all the parties hereto.

06 0113005

1/18/06

12.     <u>No Third Party Beneficiaries</u>.  This Assignment is made and entered into for the sole protection and benefit of the parties hereto and no other Person shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary of this Assignment.

13.     <u>Governing Law</u>. THIS ASSIGNMENT AND ITS VALIDITY, ENFORCEMENT AND INTERPRETATION SHALL BE GOVERNED BY ILLINOIS LAW (WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES) AND APPLICABLE UNITED STATES FEDERAL LAW, EXCEPT TO THE EXTENT THE LAWS OF THE STATE OF CALIFORNIA GOVERN THE CREATION, PERFECTION AND/OR ENFORCEMENT OF THE ASSIGNMENTS AND SECURITY INTERESTS HEREIN GRANTED.

14.     <u>Inconsistent Provisions</u>.  In the case of any inconsistency between the terms and provisions hereof and those contained in the Loan Agreement, the Loan Agreement shall control.

15.     <u>Limitation on Liability</u>.  The provisions of Section 11.30 of the Loan Agreement are incorporated herein by reference and made a part hereof.

16.     <u>Final Agreement</u>.  THIS ASSIGNMENT AND THE OTHER WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Signature Page Follows]

1/18/06

9

EXECUTED effective as of the day and date hereinabove written.

ASSIGNORS:

**NEWHALL CAPITAL RESOURCES, LLC,** a
Delaware limited liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Manager

By: _____
Name: _Peary D. Wood_____
Title: _President_____

STATE OF: ___Texas_____ )
                                     ) ss:
COUNTY OF: ___Dallas_____ )

On January _5_, 2006, before me, _Rick L Hagerich_____, Notary
Public, personally appeared _Peary D. Wood____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.



RICK L HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_____
Notary Public

**[Signatures continue on the following page]**

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgement Page
**AREI Portfolio I**
DALLAS 35130 00028 1436397v4

06  0113005

1/18/06

10

AREI NEWHALL 1, LLC, a Delaware limited
liability company

By:   Capital Resources Fund, LLC,
      a California limited liability company,
      its Vice President

By: _____
Name: _Perry D. Wood_____
Title: _President_____

STATE OF: _California_____ )
                                     ) ss:
COUNTY OF: _Shasta_____   )

On December 28, 2005, before me, _Caren C. Russell_____, Notary
Public, personally appeared _Perry D. Wood_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

_Caren C. Russell_____
                                         Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

[Signatures continue on the following page]

06  0113005

Collateral Assignment of Liens and Security Interests – Signature and Acknowledgment Page
AREI Portfolio I
DALLAS: 35130.00028: 1436397v4

1/18/06

**AREI NEWHALL 2, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary N Wood_
Title: _President_

STATE OF: _California_        )
                              ) ss:
COUNTY OF: _Shasta_           )

On December 28, 2005, before me, _CAren C. Russell_, Notary
Public, personally appeared _Peary D Wood_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

_Caren C. Russell_
                              Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

**[Signatures continue on the following page]**

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS 35130.00028: 1436397v4

06  0113005

1/18/06

12

AREI NEWHALL 3, LLC, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

     By: _____
     Name: Peary D Wood
     Title: President

STATE OF: California                    )
                                        ) ss:
COUNTY OF: Shasta                       )

    On December 28, 2005, before me, _CAREN C. RUSSELL_, Notary
Public, personally appeared _Peary D Wood_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

_Caren C. Russell_
                                   Notary Public



[Signatures continue on the following page]

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

06  0113005

1/18/06

13

**AREI NEWHALL 4, LLC**, a Delaware limited liability company

By: Capital Resources Fund, LLC,
    a California limited liability company,
    its Vice President

By: _____
Name: _Peary D Wood_____
Title: _President_____

STATE OF: _California_____ )
                                    ) ss:
COUNTY OF: _Shasta_____ )

On December 28, 2005, before me, _Caren C. Russell_, Notary Public, personally appeared _Peary D. Wood_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the person(s) acted executed the instrument.

_Caren C. Russell_
                                        Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

**[Signatures continue on the following page]**

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

06  0113005

1/18/06

14

**AREI NEWHALL 5, LLC,** a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_____
Title: _President_____


STATE OF: ___California_____     )
                                  ) ss:
COUNTY OF: ___Shasta_____       )


On December _28_, 2005, before me, ___Caren C. Russell___, Notary
Public, personally appeared ___Peary D. Wood___, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.


___Caren C. Russell___
                                        Notary Public

```
CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC-CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009
```

**[Signatures continue on the following page]**


**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

06 0113005

1/18/06

/S

**AREI NEWHALL 6, LLC,** a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _____
Name: Peary D. Wood
Title: President

STATE OF: _California_                )
                                       ) ss:
COUNTY OF: _Shasta_                    )

On December 28, 2005, before me, _CAREN C. Russell_, Notary
Public, personally appeared _Peary D. Wood_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

_Caren C. Russell_
                                    Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

**[Signatures continue on the following page]**

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

06  0113005

1/18/06

16

**AREI NEWHALL 7, LLC, a Delaware limited
liability company**

By:   Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _____
Name: Peary D Wood
Title: President

STATE OF: California                )
                                            ) ss:
COUNTY OF: Shasta                )

On December 28, 2005, before me, Caren C. Russell , Notary
Public, personally appeared Peary D. Wood , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

Caren C. Russell _____
                              Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009

**[Signatures continue on the following page]**

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS 35130.00028: 1436397v4

06 0113005

1/18/06

17

AREI NEWHALL 8, LLC, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _____
Title: _____

STATE OF: _Califomia_____ )
                                   ) ss:
COUNTY OF: _Shasta_____ )

On December 28, 2005, before me, _CAREN C. RUSSELL_____, Notary
Public, personally appeared _Peary D. Wood_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

_____
                              Notary Public

```
CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009
```

[Signatures continue on the following page]

06  0113005

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

1/18/08

**AREI NEWHALL 10, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_____
Title: _President_____


STATE OF: _California_____  )
                                 ) ss:
COUNTY OF: _Shasta_____  )


    On December 28, 2005, before me, _CAREN C. RUSSELL_____, Notary
Public, personally appeared _Peary D. Wood_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.


_____
                              Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC-CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009


**[Signatures continue on the following page]**


**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

06  0113005

1/18/06

19

**AREI NEWHALL 12, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: _Peary D. Wood_
Title: _President_


STATE OF: _California_                    )
                                          ) ss:
COUNTY OF: _Shasta_                       )


    On December 28, 2005, before me, _Caren C. Russell_, Notary
Public, personally appeared _Peary D. Wood_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.


_Caren C. Russell_
                              Notary Public

CAREN C. RUSSELL
COMM. NO. 1555019
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMMISSION EXPIRES
MARCH 11, 2009


**[Signatures continue on the following page]**


06  0113005

1/18/06

20

**AREI NEWHALL 13, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

     By: _____
     Name: _Peary D Wood_____
     Title: _President_____

STATE OF: _California_____ )
                                ) ss:
COUNTY OF: _Shasta_____ )

On December 28, 2005, before me, _Caren C. Russell____, Notary
Public, personally appeared _Peary D Wood_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

_Caren C. Russell_____
                          Notary Public

> CAREN C. RUSSELL
> COMM. NO. 1555019
> NOTARY PUBLIC - CALIFORNIA
> SHASTA COUNTY
> MY COMMISSION EXPIRES
> MARCH 11, 2009

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS 35130.00028 1436397v4

06 0113005

1/18/06

21

**AREI NEWHALL 14, LLC**, a Delaware limited
liability company

By:   Capital Resources Fund, LLC,
      a California limited liability company,
      its Vice President

By: _____
Name: _Peary D. Wall_____
Title: _President_____


STATE OF:   _TEXAS_____   )
                                  ) ss:
COUNTY OF:  _DALLAS_____   )


On January _5_, 2006, before me, _Rick L. Hagerich_____, Notary
Public, personally appeared _Peary D. Wood_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.


RICK L. HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_____
Notary Public

**[Signatures continue on the following page]**

06 0113005

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS 35130 00028 1436397v4

1/18/06

22

**AREI NEWHALL 15, LLC**, a Delaware limited
liability company

By: Capital Resources Fund, LLC,
a California limited liability company,
its Vice President

By: _Diagel Show_
Name: _Peary D. Wood_
Title: _President_

STATE OF: _TEXAS_    )
                     ) ss:
COUNTY OF: _DALLAS_  )

On January _5_, 2006, before me, _Rick L. Hagerich_, Notary
Public, personally appeared  _Peary D. Wood_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.

RICK L. HAGERICH
MY COMMISSION EXPIRES
October 28, 2007

_Rick L. Hagerich_
Notary Public

**[Signatures continue on the following page]**

06  0113005

<u>Collateral Assignment of Liens and Security Interests</u> – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS 35130.00028 1436397v4

1/18/06

23

**AREI NEWHALL 17, LLC**, a Delaware limited
liability company

By:  Capital Resources Fund, LLC,
     a California limited liability company,
     its Vice President

By: _____
Name: Peany D Wood
Title: President

STATE OF: _____Texas_____ )
                                ) ss:
COUNTY OF: _____Dallas_____ )

    On January 5, 2006, before me, Rick L Hagerich, Notary
Public, personally appeared Peary D. Wood, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the entity upon behalf of which the person(s) acted executed the instrument.



RICK L HAGERICH
MY COMMISSION EXPIRES
October 26, 2007

_____
Notary Public

06 0113005

**Collateral Assignment of Liens and Security Interests** – Signature and Acknowledgment Page
**AREI Portfolio I**
DALLAS: 35130.00028: 1436397v4

1/18/06

24

## SCHEDULE I

## LIST OF BORROWERS

NEWHALL CAPITAL RESOURCES, LLC, a Delaware limited liability company
AREI NEWHALL 1, LLC, a Delaware limited liability company
AREI NEWHALL 2, LLC, a Delaware limited liability company
AREI NEWHALL 3, LLC, a Delaware limited liability company
AREI NEWHALL 4, LLC, a Delaware limited liability company
AREI NEWHALL 5, LLC, a Delaware limited liability company
AREI NEWHALL 6, LLC, a Delaware limited liability company
AREI NEWHALL 7, LLC, a Delaware limited liability company
AREI NEWHALL 8, LLC, a Delaware limited liability company
AREI NEWHALL 10, LLC, a Delaware limited liability company
AREI NEWHALL 12, LLC, a Delaware limited liability company
AREI NEWHALL 13, LLC, a Delaware limited liability company
AREI NEWHALL 14, LLC, a Delaware limited liability company
AREI NEWHALL 15, LLC, a Delaware limited liability company
AREI NEWHALL 17, LLC, a Delaware limited liability company

06 0113005

1/18/06

25

## EXHIBIT A
## TO COLLATERAL ASSIGNMENT OF LIENS AND SECURITY INTERESTS

### DESCRIPTION OF PROPERTY

**Stanford House, Los Angeles, California**
Lots 121, 122 and 123 of Tract No. 8439, in the City of Los Angeles, County of Los Angeles, State of California as per map recorded in Book 100 Page(s) 93 to 96 inclusive of maps, in the Office of the County Recorder of said county.

**Cambridge House, Los Angeles, California**
Lots 124, 125 and 126 of Tract No. 8439, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 100 Page (s) 93 to 96 inclusive of maps, in the Office of the County Recorder of said county.

**Capri Retirement Villa, Santa Clarita, California**
Parcel 1:
That portion of Lot 3 in Section 4, Township 3 North, Range 16 West, San Bernardino Meridian, in the City of Santa Clarita, County of Los Angeles, State of California, according to the Official Plat of said land filed in the district land office on March 18, 1976, described as follows:

Beginning at the southwest corner of the land described in the deed to Los Angeles District Advisory Board, a religious corporation, recorded on December 5, 1961 as Instrument No. 660, in Book d1439 Page 994, Official Records of said county, said corner being a point in the northerly line of Newhall Pico Canyon Road, 60 feet wide, as described in the deed to the County of Los Angeles, recorded on January 17, 1930 as Instrument No. 1434, in Book 9712 Page 68 Official Records of said county; thence along said northerly line south 85° 55' 55" west 10.00 feet; thence parallel with the westerly line of the land described in said deed to the Los Angeles Advisory Board, north 4° 04' 05" west 248.75 feet, more or less, to the northerly line of said section; thence along said last mentioned northerly line, north 88° 05' 00" east 10.12 feet, more or less, to the northwest corner of the land described in said deed to Los Angeles Advisory Board; thence along the westerly line of the land described in said last mentioned deed, south 4° 04' 05" east 248.38 feet to the Point of Beginning.

Parcel 2:
That portion of Lot 3 in Section 4, Township 3 North, Range 16 West, San Bernardino Meridian, in the City of Santa Clarita, County of Los Angeles, State of California, according to the Official Plat of said land filed in the district land office on March 18, 1976, described as follows:

Beginning at the southwest corner of the land described in the deed to William Mayhue, et al., recorded in Book 10271 Page 312, Official Records, in the Office of the County Recorder of said county, said corner being a point in the northerly line of Newhall Pico Canyon Road, 60 feet wide, as described in the deed to the County of Los Angeles, recorded on January 17, 1930 as Instrument No. 1434 in Book 9712 Page 68 Official Records of said county; thence along said northerly line, south 85° 55' 55" west 140 feet; thence parallel with the westerly line of the land described in said deed to Mayhue north 4° 04' 05" west 248.38 feet to the northerly line of said

**Collateral Assignment of Liens and Security Interests** – Exhibit A – Page 1
**AREI Portfolio I**
DALLAS 35130.00028 1436397v4

06  0113005

1/18/06

26

section; thence along said last mentioned northerly line, north 88° 05' 00" east 140.12 feet to the northwest corner of the land described in said deed to Mayhue; thence along the westerly line of the land described in said deed to Mayhue, south 4° 04' 05" east 243.12 feet to the Point of Beginning.

06  0113005

# EXHIBIT "E"

Loan No. 07-0004232

## AGREEMENT OF PRINCIPALS

This AGREEMENT OF PRINCIPALS (this "Agreement") is made this 13th day of January, 2006 by ASSET REAL ESTATE & INVESTMENT COMPANY, a California corporation ("AREI") and JAMES S. KOENIG (individually "Principal", and collectively, "Principals") to GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation (in its individual capacity, "GECC" and as agent for Lender, "Agent"), as Agent.

## RECITALS

A.    **Financial Accommodations**.  The parties listed on Schedule I attached hereto (each a "Borrower" and collectively the "Borrowers"), are concurrently herewith entering into that certain Loan Agreement (as it may be amended from time to time, the "Loan Agreement") of even date herewith among Borrowers, Agent, GECC and the other financial institutions who are or hereafter become parties to the Loan Agreement as a lender (together with GECC, collectively or individually, as the context may require, "Lender"), pursuant to which Lender shall extend financial accommodations to Borrowers.

B.    **Inducement**.  To induce Lender and Agent to enter into the Loan Agreement and to induce Lender to extend to Borrowers the financial accommodations set forth in the Loan Agreement, each Principal has agreed to enter into this Agreement, each Principal acknowledging that without this Agreement Lender would be unwilling to make the Loan (as defined in the Loan Agreement).

## AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Principal hereby agrees and covenant as follows:

1.    **Definitions**.  All capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement.

2.    **Retained Liability**.  The Principals shall, jointly and severally with Borrowers, be personally liable for the following (collectively called the "Retained Liabilities"):

(a)    all losses, damages, liabilities, obligations, costs and expenses, (including, without limitation, attorney's fees), causes of action, suits, claims, demands and judgments of any nature or description whatsoever, which may be imposed upon, incurred by or awarded against Agent or Lender or any affiliate thereof as a result of:

(i)    any failure after the occurrence and during the continuance of any Event of Default, to apply any portion of the gross income from the Projects to (a) the Loan or (b) to customary operating and capital expenses of the Projects or (c) any required

**Agreement of Principals – Page 1**
**AREI Portfolio I**
DALLAS: 535130.00028: 1436407v4

reserves or escrows required under the Loan Documents, whether held by Agent or Borrowers, before using such income for other purposes;

(ii)    fraud or willful misconduct by any Borrower, any Principal, any Affiliate, any other Loan Party or their respective employees, managers, agents or other representatives relating to the Loan or the Projects;

(iii)    any misappropriation of any funds deriving from the Projects, including, without limitation, misapplication of proceeds of insurance or condemnation or security deposits of any tenant or Master Tenant by any Borrower, any Principal, any Affiliate, any other Loan Party or their respective employees, managers, agents or other representatives;

(iv)    any material misrepresentation made to Agent or Lender by any Borrower, any Principal, any other Loan Party, any Affiliate or their respective employees, managers, agents or other representatives relating to the Loan or the Projects;

(v)    any material waste or abandonment of the Projects by any Borrower, any Principal, any other Loan Party, any Affiliate or their respective employees, managers, agents or other representatives;

(vi)    any failure to keep the Projects insured in accordance with the terms of the Loan Documents;

(vii)    any failure of any Borrower to timely perform its obligations as landlord under any of the Leases or the Master Leases;

(viii)    payments of rents prepaid to any Borrower more than one month in advance;

(ix)    any amendment, modification, supplement, cancellation, termination or surrender of any of the Leases, or any guaranty thereof, or any affirmative waiver of any default by a tenant or guarantor thereunder, by any Borrower (except only to the extent expressly permitted under the Loan Agreement) without the prior written consent of Agent in each instance;

(x)    all costs and expenses, court costs and costs of appeal incurred by Agent or Lender in collecting any amount due Agent or Lender under this Agreement or in prosecuting any action against any Borrower, any Principal or any other guarantor with respect to all or any part of Obligations secured by the Loan Documents (collectively, the "Enforcement Costs"); or

(xi)    any Borrower's failure to comply in any respect with Sections 7.3 (Taxes), 7.21 (Employees), 7.20 (Anti-Terrorism and Anti-Money Laundering Compliance), and 7.25 Master Leases of the Loan Agreement;

(xii)    any fees or distributions paid to any Principal or an Affiliate or any other Loan Party after the occurrence and during the continuation of an Event of Default under the Loan Documents other than reasonable and customary market fees or costs paid or incurred for or in the operation or management of the Projects; and

(xiii)    any liabilities of Borrowers or Principals under the Environmental Indemnity from Borrowers and Principals to Agent of even date herewith (as amended from time to time, the "**Environmental Indemnity**");

(b)    repayment of the Loan, the Make-Whole Breakage Amount, Prepayment Premium, any Enforcement Costs incurred by Agent or Lender and all other Obligations of Borrowers under the Loan Documents in the event of (i) any breach of any of the covenants in Sections 7.2 (Due on Sale and Encumbrances; Transfers of Interests), 7.9 (Limitation on Other Debt), 7.4 (Control; Management) or 7.7 and 7.29 (Single Purpose Entity) of the Loan Agreement, or (ii) the filing by any Borrower or any Loan Party or the filing against any Borrower or any Loan Party by any Borrower or any Loan Party or any Affiliate of any proceeding for relief under any federal or state bankruptcy, insolvency or receivership laws or any assignment for the benefit of creditors made by any Borrower or any Loan Party, or (iii) the admission by any Borrower or any Loan Party in writing of its inability to pay its debts generally as they become due.

3.    **Primary Liability**.   The liability of each Principal for the Retained Liabilities shall be direct and immediate as a primary and not a secondary obligation or liability, and is not conditional or contingent upon the pursuit of any remedies against any Borrower, any other Principal or any other Person, or against any collateral or liens held by Agent.   Each Principal agrees that any notice or directive given at any time to Agent or Lender which is inconsistent with the immediately preceding sentence shall be null and void and may be ignored by Agent and Lender, and, in addition, may not be pleaded or introduced as evidence in any litigation relating to this Agreement for the reason that such pleading or introduction would be at variance with the written terms of this Agreement, unless Agent and Lender have specifically agreed otherwise in writing. Each Principal waives any rights which it may have to require that (a) Agent or Lender first proceed against any Borrower, any other Principal or any other Person or entity with respect to the Retained Liabilities or (b) Agent or Lender first proceed against any collateral held by Agent or (c) any party to be joined in any proceeding to enforce the Retained Liabilities.

4.    **Liability of Principals Not Affected**.   This Agreement shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by any circumstances or condition, including, without limitation:

(a)    the attempt or the absence of any attempt by Lender or Agent to obtain payment or performance by any Borrower or any guarantor;

(b)    Lender's or Agent's delay in enforcing or absence of action to enforce any Principal's obligations hereunder or of any other party under the Loan Documents, or any prior partial exercise by Lender or Agent of any right or remedy hereunder or under any of the other Loan Documents;

(c) any renewal, extension, substitution, modification, settlement, compromise, replacement of or indulgence with respect to, the Obligations, all of which Agent is hereby authorized to make;

(d) any sale, exchange, release, surrender or other disposition of, or realization upon, any collateral securing the Obligations, or any amendment, waiver, settlement or compromise of any guaranties of the Obligations, or any other obligation of any Person with respect to the Loan Documents;

(e) the acceptance by Lender or Agent of any additional security for the Obligations;

(f) the lack of genuineness, validity, regularity or enforceability of or Lender's or Agent's amendment, waiver or consent with respect to, any provision of any instrument evidencing, securing or otherwise relating to the Obligations, or any part thereof, including without limitation, the other Loan Documents;

(g) the existence, value or condition of, or the failure by Lender or Agent to take any steps to perfect, maintain, or enforce, Lender's or Agent's security interests or remedies under the Loan Documents, or to preserve Lender's or Agent's rights to or protect any security or collateral, for the Obligations;

(h) any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar event or proceedings with respect to any Borrower or any other Principal or any other Person, as applicable, or any of their respective properties (each, an **"Insolvency Proceeding"**), or any action taken by Lender, Agent, any trustee or receiver or by any court in any such proceeding;

(i) the failure by Lender or Agent to file or enforce a claim against the estate (either in an Insolvency Proceeding or other proceeding) of any Borrower or any other Principal or any other Person;

(j) in any proceeding under Title 11 of the United States Code (11 U.S.C. Section 101 et seq.), as amended (the **"Bankruptcy Code"**): (i) any election by Lender or Agent under Section 1111(b)(2) of the Bankruptcy Code, (ii) any borrowing or grant of a security interest by any Borrower as debtor-in-possession under Section 364 of the Bankruptcy Code, (iii) the inability of Lender or Agent to enforce the Obligations against any Borrower by application of the automatic stay provisions of Section 362 of the Bankruptcy Code, or (iv) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender's or Agent's claim(s) against any Borrower for repayment of the Obligations;

(k) the failure of any Principal to receive notice of any intended disposition of the collateral for the Obligations;

(l)    any merger or consolidation of any Borrower into or with any other entity, or any sale, lease or transfer of any of the assets of any Borrower or any other Principal to any other Person;

(m)    any change in the ownership of any Borrower, or any change in the relationship between any Borrower and any Principal or any termination of any such relationship;

(n)    the death, incapacity, insanity, disability, dissolution or other change in status of any Borrower or any other Principal;

(o)    the making of additional loans to Borrowers, the increase or reduction of the maximum principal amount of the Obligations, the increase or reduction in the interest rate provided in the Notes, or any other modification, amendment, release or waiver of the terms of the Loan Documents;

(p)    the absence, impairment or loss of any right of reimbursement or subrogation or other right or remedy of any Principal; and

(q)    any other action or circumstance which might otherwise constitute a legal or equitable discharge or defense of any Borrower, any other Principal or any other Person.

Each Principal hereby expressly waives and surrenders any defense to its liability under this Agreement based upon any of the foregoing acts, omissions, agreements, waivers or matters, whether or not such Principal had notice or knowledge of same. It is the purpose and intent of this Agreement that the obligations of each Principal hereunder shall be absolute and unconditional under any and all circumstances.

5.    **Representations, Warranties and Covenants**.    Each Principal represents, warrants and covenants to Agent and Lender as follows:

(a)    **Organization**.  AREI is a corporation duly organized, validly existing and in good standing under the laws of the State of California with its principal place of business at 443 Redcliff Drive, Suite 100, Redding, California 96002.  Each Principal has full right, power and authority to execute the Loan Documents to which it is a party on its own behalf.

(b)    **Governing Documents**.  A true, complete and correct copy of the articles of incorporation and bylaws creating AREI and any amendments thereto, and all other documents creating and governing AREI (collectively, the **"Principal Documents"**) have been furnished to Agent.  The Principal Documents constitute the entire agreement among the shareholders of AREI and are binding upon and enforceable against each of the shareholders in accordance with their terms.  There are no other agreements, oral or written, among any of the shareholders with respect to AREI.  No breach exists under any of the Principal Documents and no condition exists which, with the giving of notice or the passage of time would constitute a breach under any of the Principal Documents.

(c)    **Existence.**  AREI shall preserve and keep in full force and effect its existence, entity status, franchises, rights and privileges under the laws of its state of formation. AREI shall not wind up, liquidate, dissolve, reorganize, merge, or consolidate with or into, or convey, sell, assign, transfer, lease or otherwise dispose of all or substantially all of its assets, or acquire all or substantially all of the assets of the business of any Person, or permit any subsidiary or Affiliate of Borrower to do so.  AREI shall not amend or terminate or permit the amendment or termination of AREI's articles of incorporation without the prior written consent of Agent.  AREI shall not change its name, identity, or organizational structure, the location of its chief executive office or principal place of business or its state of organization unless Agent has been notified in writing in advance.  AREI shall maintain its separateness as an entity, including maintaining separate books, records, and accounts and observing corporate and/or partnership formalities independent of any other entity, shall pay its obligations with its own funds and shall not commingle funds or assets with those of any other Person.

(d)    **Financial Statements.**  All financial statements and other financial information furnished or to be furnished to Lender or Agent (i) are or will be true and correct in all material respects and do or will fairly represent the financial condition of each Principal (including all contingent liabilities), and (ii) were or will be prepared in accordance with generally acceptable accounting principals, consistently applied.  There has been no material adverse change in any Principal's financial condition since the dates of the statements most recently furnished Lender or Agent.

(e)    **No Defaults.**  There is no existing event of default, and no event has occurred which with the passage of time and/or the giving of notice will constitute an event of default, under any agreement to which any Principal is a party, which event of default could reasonably be expected to have a material adverse effect on any Principal's ability to perform the Retained Liabilities under this Agreement, and neither the execution and delivery of this Agreement nor compliance with the terms and provisions hereof will violate any presently existing provision of law or any presently existing regulation, order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality, or constitute a default under, any agreement to which any Principal is a party or by which any Principal or its property is bound.

(f)    **No Litigation.**  There are no actions, suits or proceedings pending or threatened against any Principal before any court or any governmental, administrative, regulatory, adjudicatory or arbitrational body or agency of any kind which, if decided adversely, could reasonably be expected to adversely affect performance by any Principal of such Principal's obligations pursuant to and as contemplated by the terms and provisions of this Agreement.

(g)    **Accuracy.**  Neither this Agreement nor any document, financial statement, credit information, certificate or statement heretofore furnished or required herein to be furnished to Lender or Agent by Agreement contains any untrue statement of fact or omits to state a fact material to this Agreement.

(h)   **No Defenses**.  As of the date of this Agreement, Principal's obligations under this Agreement are not subject to any offsets or defenses against Agent or Lender of any kind.

(i)   **Maximum Recourse Indebtedness**.  As of the date hereof, the Principals, in aggregate, are not responsible, whether primarily or secondarily, whether as a borrower, guarantor, surety or otherwise, for the payment of more than Twenty-Five Thousand and No/Dollars ($25,000.00) in aggregate of indebtedness for borrowed money, excluding amounts due Lender or Agent.

6.   **Rights of Agent**.  Agent is hereby authorized, without notice to or demand of Principals and without affecting the liability of any Principal hereunder, to take any of the following actions from time to time:

(a)   increase or decrease the amount of, or renew, extend, accelerate or otherwise change the time, place or terms for payment of, or other terms relating to, the indebtedness and/or obligations under the Loan Documents, or otherwise modify, amend or change the terms of any promissory note or other agreement evidencing, securing or otherwise relating to any of the indebtedness and/or obligations under the Loan Documents, including, without limitation, the making of additional advances thereunder;

(b)   accept and apply any payments on or recoveries against the Obligations or Retained Liabilities from any source, and any proceeds of any security therefor, to the Obligations or Retained Liabilities in such manner, order and priority as Agent may elect in Agent's sole discretion;

(c)   take, hold, sell, exchange, dispose of, release or otherwise dispose of all or any property pledged, mortgaged or conveyed, or in which Agent or Lender has been granted a lien, as security for the Obligations or Retained Liabilities or the payment of the amounts due and performance of the obligations under the Loan Documents;

(d)   settle, release, compromise, collect or otherwise liquidate the Obligations or Retained Liabilities or any portion thereof;

(e)   accept, hold, substitute, add or release any other guaranty or endorsements of the Obligations or Retained Liabilities;

(f)   take any action under or in respect of the Loan Documents in the exercise of any remedy, power or privilege contained therein or available to Agent or Lender at law, equity or otherwise, or waive or refrain from exercising any such remedies, powers or privileges;

(g)   amend or modify, in any manner whatsoever, the Loan Documents;

(h)   extend or waive the time for any Person's performance of, or compliance with, any term, covenant or agreement on its part to be performed or observed under the Loan Documents, or waive such performance or compliance or consent to a failure of, or departure from, such performance or compliance;

(i)    release anyone who may be liable in any manner for the payment of any amounts owed by any Principal or any Borrower or Loan Party to Agent or Lender under any Loan Document;

(j)    modify or terminate the terms of any intercreditor or subordination agreement pursuant to which claims of other creditors of any Principal, Borrower or Loan Party are subordinated to the claims of Agent and Lender; and

(k)    at any time after maturity of the Obligations or demand for payment of the Retained Liabilities, appropriate and apply toward payment of the Obligations or Retained Liabilities (i) any indebtedness due or to become due from Lender or Agent to any Principal, and (ii) any moneys, credits, or other property belonging to any Principal at any time held by or coming into the possession of Lender, Agent or any affiliates thereof, whether for deposit or otherwise;

and Agent and Lender shall not incur any liability to any Principal as a result thereof, and no such action shall impair or release the obligations of Principals or any of them under this Agreement.

7.    **Subordination.**    All indebtedness now or hereafter owing by any Borrower to Principals for borrowed money or otherwise is hereby subordinated to the payment of the Obligations, and, subsequent to any monetary default or any Event of Default hereunder or under any of the other Loan Documents, Principals shall not accept payment of all or any portion of such subordinated indebtedness until satisfaction in full of the Obligations. All security interests, liens and encumbrances which any Principal now or hereafter may have upon any of the assets of Borrowers, or any one of them, are hereby subordinated to all security interests, liens and encumbrances heretofore, now or hereafter granted to Agent, for the benefit of Agent and Lender, pursuant to any of the Loan Documents.

8.    **Waiver of Defenses.**

(a)    **Statutes of Limitation.**    Each Principal hereby irrevocably waives and agrees not to assert or take advantage of all statutes of limitation as a defense to any action or proceeding brought against any Borrower, Principal or Loan Party by Lender or Agent, to the fullest extent permitted by law.

(b)    **Election of Remedies.**    If Agent may, under applicable law, proceed to realize benefits under any of the Loan Documents giving Agent and/or Lender a lien upon any collateral owned by any Borrower or other Loan Party, either by judicial foreclosure or by non-judicial sale or enforcement, Agent may, at its sole option, determine which of such remedies or rights it may pursue without affecting any of Agent's or Lender's rights and remedies under this Agreement. If, in the exercise of any of Agent's or Lenders rights and remedies against any Borrower or any Principal or any other Person liable with respect to the Obligations, Agent or Lender shall forfeit any of its rights or remedies, including its right to enter a deficiency judgment against any Borrower, whether because of any applicable laws pertaining to "election of remedies" or the like, each Principal hereby consents to such action by Agent and/or Lender, as applicable, and waives any claim or defense based upon such action, even if such action by

Agent or Lender shall result in a full or partial loss of any rights of subrogation which Principals might otherwise have had but for such action by Agent or Lender. In the event Agent or Lender shall bid at any foreclosure or trustee's sale or at any private sale permitted by law or the Loan Documents, Agent or Lender may bid all or less than the amount of the Obligations under the Loan Documents and the amount of such bid need not be paid by Agent or Lender but shall be credited against the Obligations under the Loan Documents. The amount of the successful bid at any such sale shall be conclusively deemed to be the fair market value of the collateral, notwithstanding any present or future law or court decision or ruling that may have the effect of reducing the amount of any deficiency claim to which Agent and Lender might otherwise be entitled but for such bidding at any such sale. Any election of remedies which results in the denial or impairment of the right of Agent or Lender to seek a deficiency judgment against any Borrower shall not impair any Principal's obligation to pay the full amount of the Retained Liabilities, and each Principal hereby irrevocably waives any defense based upon an election of remedies made by Lender or Agent or any other election afforded to Lender or Agent pursuant to applicable law, including, without limitation, (a) any election to proceed by judicial or nonjudicial foreclosure or by Uniform Commercial Code sale or by deed or assignment in lieu thereof, or any election of remedies which destroys or otherwise impairs the subrogation rights of the Principals or the rights of any Principal to proceed against any Borrower or any other Person for reimbursement, or both, (b) the waiver by Lender or Agent, either by action or inaction of Lender or Agent or by operation of law, of a deficiency judgment against any Borrower, and (c) any election pursuant to an Insolvency Proceeding.

    (c)    **Rights of Subrogation and Other Rights**. Each Principal hereby:

    (i)    expressly and irrevocably waives, on behalf of itself and its successors and assigns (including any surety) (i) any and all rights at law or in equity to seek subrogation, contribution, indemnification or any other form of reimbursement or repayment from any Borrower or any other Person now or hereafter primarily or secondarily liable for any of the Retained Liabilities or Obligations for any disbursements made by any Principal under or in connection with this Agreement, (ii) all claims of any kind or type against any Borrower as a result of any payment made by any Principal to Lender or Agent, and (iii) any right to participate in any security now or hereafter held by Lender or Agent. In furtherance, and not in limitation, of the foregoing, each Principal agrees that any payment to Lender or Agent pursuant to this Agreement shall be deemed a contribution to the capital of Borrowers or other obligated party and shall not constitute any Principal a creditor of Borrowers or such other party.

    (ii)    Each Principal further acknowledges and agrees that (A) this waiver is intended to benefit Agent and Lender and shall not limit or otherwise affect any Principal's liability hereunder or the enforceability of this Agreement (B) Agent, Lender and their respective successors and assigns are intended third party beneficiaries of the waivers and agreements set forth in this Section 7(c) and their rights under this Section 7(c) shall survive payment in full of the Retained Liabilities and Obligations, and (C) to the extent the waiver of its rights of subrogation as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation any Principal may have against any Borrower or against any collateral or security for any

of the Retained Liabilities shall be junior and subordinate to any rights Lender or Agent may have against Borrowers and to all right, title and interest Lender or Agent may have in such collateral or security.

(d) **Demands and Notices**. Each Principal irrevocably waives all presentments, demands for performance, protests, notices of protest, notices of dishonor, notice of acceleration to Borrowers, any other Person or Principal or any other party with respect to the Loan or the Retained Liabilities, notices of acceptance of this Agreement and of the existence, creation or incurring of new or additional obligations under the Loan Documents, notices of defaults by Borrowers or any other Person liable for the Obligations or Retained Liabilities and demands and notices of every kind that may be required to be given by any statute or rule or law.

(e) **Borrower Information**. Each Principal irrevocably waives (a) any duty of Lender or Agent to advise Principals of any facts that may now or hereafter be known to Lender or Agent regarding the Borrowers, regardless of whether Agent or Lender has reason to believe that any such facts materially increase the risk beyond that which any Principal intends to assume or has reason to believe that such facts are unknown to any Principal, each Principal acknowledging that such Principal is fully responsible for being and keeping informed of the financial condition and affairs of Borrowers, and (b) any defense based on any claim that any Principal's obligations exceed or are more burdensome than those of Borrowers, or any of them.

(f) **Limitation of Liability**. Each Principal irrevocably waives any impairment, modification, change, release or limitation of the liability of, or stay of actions or lien enforcement proceedings against, any Borrower or any Principal, their property, or their estate in bankruptcy, resulting from the operation of any provision of the state or federal bankruptcy laws, or from the decision of any court.

(g) **Lack of Diligence**. Each Principal irrevocably waives any and all claims or defenses based upon lack of diligence in: (a) collection of any of the Obligations or Retained Liabilities; (b) protection of any collateral or other security for the indebtedness or obligations under the Loan Documents; or (c) realization upon the other Loan Documents.

(h) **Other Defenses**. Each Principal irrevocably waives any other defenses, set-offs or counterclaims which may be available to a Borrower, or any other Principal if there are more than one, and any and all other defenses now or at any time hereafter available to any Principal (including without limitation those given to sureties) at law or in equity, including but not limited to any defenses based upon:

(i) the incapacity, lack of authority, death, disability or dissolution of any Borrower, any other Person or any Principal;

(ii) the failure of Agent or Lender to commence an action against any Borrower or any other Person or to proceed against or exhaust any security held by Agent at any time or to pursue any other remedy whatsoever at any time;

(iii) the consideration for this Agreement;

(iv)    any acts or omissions of Agent or Lender which vary, increase or decrease the risk of any Principal;

(v)    the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrowers to Agent or intended or understood by Agent or Principals;

(vi)    any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other aspects more burdensome than that of a principal;

(vii)    Agent's or Lender's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 111(b)(2) of the Bankruptcy Code or any successor statute; and

(viii)    any borrowing or any grant of a security interest under Section 364 of the Bankruptcy Code.

It is agreed among Principals, Agent and Lender that the waivers set forth in this Agreement are of the essence of the transaction contemplated by the Loan Documents and that, but for this Agreement and such waivers, Agent and Lender would decline to enter into the Loan Agreement.

9.    **California Waiver Provisions**.    Each Principal hereby waives, to the maximum extent permitted by California Civil Code Section 2856 and/or other applicable law, all suretyship rights and defenses which might otherwise be available to Principals under or pursuant to California Civil Code Sections 2787 through 2855 inclusive.

(a)    Each Principal hereby waives all rights and defenses that Principals may have because the Borrowers' debt is secured by real property. This means, among other things:

(i)    Agent may collect from Principals without first foreclosing on any real or personal property collateral pledged by the Borrowers;

(ii)    If Agent forecloses on any real property collateral pledged by the Borrowers:

(A)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(B)    Agent may collect from Principals even if Agent, by foreclosing on the real property collateral, has destroyed any right Principals may have to collect from Borrowers.

This is an unconditional and irrevocable waiver of any rights and defenses Principals may have because the Borrowers' debt is secured by real property. These rights and defenses include, but



Agreement of Principals – Page 11
AREI Portfolio I
DALLAS 535130.00028 1436407v4

are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

(b)    Each Principal hereby waives all rights and defenses arising out of an election of remedies by Agent or Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed any Principal's rights of subrogation and reimbursement against Borrowers by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

Without limiting the generality of the foregoing, each Principal hereby expressly: (a) waives any and all benefits which might otherwise be available to it under California Civil Code Sections 2809, 2810, 2819, 2839, 2845 through 2847, 2849, 2850, 2899 and 3433, and California Code of Civil Procedure Sections 580a, 580b, 580d and 726, or any similar statutes of other states; (b) acknowledges that Section 2856 of the California Civil Code authorizes and validates waivers of a guarantor's rights of subrogation and reimbursement and certain other rights and defenses available to Principals under California law; and (c) waives all rights of subrogation, reimbursement, indemnification and contribution and all other rights and defenses that are or may become available by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

10.    **Enforcement**.  Agent shall have the right to enforce this Agreement in a separate action against one or more of the Principals, or by an action against Principal and some or all of the Principals or other Persons obligated under the Loan Documents, or any combination of the foregoing.

11.    **Revival and Reinstatement**.  This Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against any Borrower or any Loan Party for liquidation or reorganization, should any Borrower or any Loan Party become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of such Borrower or Loan Party's assets.  This Agreement shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Retained Liabilities, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by Agent or Lender, whether as a "voidable preference", "fraudulent conveyance", or otherwise, all as though such payment or performance had not been made to Agent or Lender in the first place. In the event that any payment of any of the Obligations, or any part thereof, is rescinded, reduced, restored or returned, the Retained Liabilities shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

12.    **No Marshalling**.  Neither Lender nor Agent has any obligation to marshal any assets in favor of Principals, or against or in payment of (a) any of the Obligations, or (b) any other obligation owed to Lender or Agent by Principals, Borrowers or any other Person.

13.    **No Modification, Waiver or Release Without Writing**.  Except as may otherwise be expressly set forth herein, this Agreement may not be modified, amended, revised, revoked, terminated, changed or varied in any way whatsoever, nor shall any waiver of any of the provisions of this Agreement be binding upon Lender or Agent, except as expressly set forth

in a writing duly executed by Agent. No waiver by Lender or Agent of any default shall operate as a waiver of any other default or the same default on a future occasion, and no action by Lender or Agent permitted hereunder shall in any way affect or impair Lender's or Agent's rights or the obligations of Principals under this Agreement.

14.    **Assignment; Successors and Assigns.**    Principals may not assign Principals' obligations or liability under this Agreement. Subject to the preceding sentence, this Agreement shall be binding upon the parties hereto and their respective heirs, executors, successors, representatives and assigns and shall inure to the benefit of the parties hereto and their respective successors and assigns. Lender or Agent may, without notice to anyone, sell or assign the Obligations, the Notes or other Loan Documents or any part thereof, or grant participations therein, and in any such event each and every assignee or holder of, or participant in, all or any of the Obligations shall have the right to enforce this Agreement, by suit or otherwise for the benefit of such assignee, holder, or participant, as fully as if herein by name specifically given such right, but Lender and Agent shall have an unimpaired right, prior and superior to that of any such assignee, holder or participant, to enforce this Agreement for the benefit of Lender and Agent.

15.    **Integration.**    This Agreement is the entire agreement of Principals with respect to the subject matter of this Agreement, provided that this Agreement shall not in any way limit or abrogate the obligations of Principals under the other Loan Documents, including, without limitation, the Environmental Indemnity of even date herewith.

16.    **Rights Cumulative.**    All of Lender's rights under this Agreement and the other Loan Documents are cumulative. The exercise of any one right does not exclude the exercise of any other right given in this Agreement or the other Loan Documents or any other right of Lender or Agent not set forth in this Agreement or the other Loan Documents.

17.    **Severability.**    Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

18.    **Material Inducement; Consideration.**    Each Principal acknowledges and agrees that Lender and Agent are specifically relying upon the representations, warranties, agreements and waivers contained herein and that such representations, warranties, agreements and waivers constitute a material inducement to Lender and Agent to accept this Agreement and to enter into the Loan Agreement and the transaction contemplated therein. Each Principal further acknowledges that it expects to benefit from Lender's and Agent's extension of financing accommodations to Borrowers because of its relationship to Borrowers, and that it is executing this Agreement in consideration of that anticipated benefit.

19.    **Indemnification.**    Each Principal agrees to indemnify, pay and hold Lender and Agent and their respective officers, directors, employees, agents, and attorneys (collectively called the **"Indemnitees"**) harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and

disbursements of any kind or nature whatsoever (including the reasonable fees and disbursements of counsel for such Indemnitees in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto) that may be imposed on, incurred by, or asserted against that Indemnitee, in any manner relating to or arising out of this Agreement or the exercise of any right or remedy hereunder or under the other documents pertaining to the Retained Liabilities or Obligations (the **"Indemnified Liabilities"**); <u>provided</u> that each Principal shall have no obligation to an Indemnitee under this subsection with respect to Indemnified Liabilities arising from the gross negligence or willful misconduct of that Indemnitee as determined by a court of competent jurisdiction. To the extent that the undertaking to indemnify, pay and hold harmless set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, each Principal shall contribute the maximum portion that it is permitted to pay and satisfy under applicable law to the payment and satisfaction of all Indemnified Liabilities incurred by the Indemnitees or any of them.

20.    **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which, when taken together, shall be deemed one and the same agreement.

21.    **Governing Law**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois, without regard to conflict of law provisions.

22.    **Assignment of Rights in Insolvency Proceedings**. In the event any Insolvency Proceeding is instituted by or against any Borrower, whether voluntary or involuntary, Agent shall have the right to: (a) file claims in any such proceeding on behalf of any Principal; and (b) vote any Principal's claims in any such proceeding.

23.    **Time of Essence**. Time is of the essence in this Agreement.

24.    **Joint and Several**. The obligations of Principals hereunder shall be joint and several obligations of each Principal, if more than one, and of each Principal's heirs, personal representatives, successors and assigns.

25.    **Parties in Interest**. Except as expressly set forth herein, nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any person other than the parties hereto and their respective successors and assigns (as provided in <u>Section 10</u>), nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any provision give any third persons any right of subrogation or action over or against any party to this Agreement.

26.    **VENUE**. EACH PRINCIPAL HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS AND IRREVOCABLY AGREES THAT, SUBJECT TO AGENT'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OTHER LOAN

DOCUMENTS SHALL BE LITIGATED IN SUCH COURTS. EACH PRINCIPAL EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. EACH PRINCIPAL HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON EACH PRINCIPAL BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO EACH PRINCIPAL, AT THE ADDRESS SET FORTH IN THE LOAN AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.

27.    WAIVER OF JURY TRIAL.    PRINCIPALS, AND BY THEIR ACCEPTANCE OF THIS AGREEMENT, LENDER AND AGENT, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED.    THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY PRINCIPALS, AND BY THEIR ACCEPTANCE OF THIS AGREEMENT, LENDER AND AGENT.    LENDER, AGENT AND PRINCIPALS ACKNOWLEDGE THAT NEITHER LENDER, AGENT NOR ANY PERSON ACTING ON BEHALF OF LENDER OR AGENT HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.    EACH PRINCIPAL, AGENT AND LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT GUARANTOR, AGENT AND LENDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. GUARANTOR, AGENT AND LENDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

28.    WAIVERS.    THE WAIVERS SET FORTH IN THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, SECTIONS 26 AND 27 ABOVE) ARE KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY PRINCIPALS, AND PRINCIPALS ACKNOWLEDGES THAT NEITHER LENDER, AGENT NOR ANY PERSON ACTING ON BEHALF OF IT, HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THESE WAIVERS OR IN ANY WAY TO MODIFY OR NULLIFY THEIR EFFECT.    EACH PRINCIPAL FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THESE WAIVERS BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THESE WAIVERS WITH COUNSEL.

Each Principal has executed this Agreement of Principals or have caused the same to be executed by its duly authorized representatives as of the date first set forth above.

**PRINCIPALS**

ASSET REAL ESTATE INVESTMENT COMPANY, a California corporation

By: _____

Name: _____

Title: _____


_____

JAMES S. KOENIG

## Schedule 1

### Borrowers

NEWHALL CAPITAL RESOURCES, LLC, a Delaware limited liability company
AREI NEWHALL 1, LLC, a Delaware limited liability company
AREI NEWHALL 2, LLC, a Delaware limited liability company
AREI NEWHALL 3, LLC, a Delaware limited liability company
AREI NEWHALL 4, LLC, a Delaware limited liability company
AREI NEWHALL 5, LLC, a Delaware limited liability company
AREI NEWHALL 6, LLC, a Delaware limited liability company
AREI NEWHALL 7, LLC, a Delaware limited liability company
AREI NEWHALL 8, LLC, a Delaware limited liability company
AREI NEWHALL 10, LLC, a Delaware limited liability company
AREI NEWHALL 12, LLC, a Delaware limited liability company
AREI NEWHALL 13, LLC, a Delaware limited liability company
AREI NEWHALL 14, LLC, a Delaware limited liability company
AREI NEWHALL 15, LLC, a Delaware limited liability company
AREI NEWHALL 17, LLC, a Delaware limited liability company

# EXHIBIT "F"



**GE Commercial Finance**
**Healthcare Financial Services**

Richard Arrowsmith
Senior Vice President

Two Bethesda Metro Center, Ste. 600
Bethesda, MD 20814
301.347.3124 (office)
866.206.5052 (fax)
richard.arrowsmith@ge.com

January 3, 2008

**BY FACSIMILE (530-226-1484)**
**OVERNIGHT DELIVERY AND EMAIL**

Asset Real Estate & Investment Company
443 Redcliff Drive, Suite 100
Redding, California 96002
Attention: James S. Koenig, President

James S. Koenig
443 Redcliff Drive, Suite 100
Redding, California 96002

Re:     **NOTICE OF RETAINED LIABILITIES AND DEMAND FOR PAYMENT**

Gentlemen:

Reference is made to that certain Agreement of Principals dated as of January 13, 2006 (as it may be amended from time to time, the "Agreement"), by and among Asset Real Estate & Investment Company and James S. Koenig (together the "Principals", and each a "Principal") and General Electric Capital Corporation, as Lender and as agent (in its capacity as agent, "Agent"). Capitalized terms used herein without definition shall have the meanings assigned thereto in the Agreement .

The Agreement provides that the Principals shall have personal liability for repayment of the Loan and various other Obligations under certain circumstances. One of those circumstances is the filing of a bankruptcy case by a Borrower. As you know, approximately ten of the Borrowers filed bankruptcy cases last week.

This letter is to formally notify you of your personal liability and to demand immediate payment of the full amount of the Loan and the related Obligations. You are already familiar with the amount of those Obligations from previous correspondence. When you are prepared to tender payment, please contact the undersigned for an exact payment amount.

Agent hereby reserves all rights and remedies under the Agreement, the Loan Agreement, the Loan Documents, at law and in equity. Any failure or delay by Agent in exercising any right, power or remedy under the Agreement, the Loan Agreement, the Loan Documents, at law and in equity, nor any acceptance of partial performance or partial payment, (a) shall not operate as a waiver of such right, power or remedy, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise of such right, power or remedy or the exercise of any other right, power or remedy, and (b) shall not be sufficient, by itself or together with any other action or inaction by Agent, to establish a course of dealing or course of conduct by Agent upon which Principals shall be entitled to rely. Notwithstanding the existence or content of any communication – including any verbal conversations – by or between Principals and Agent, or any of their representatives, regarding any matters pertaining to the Agreement, the Loan Agreement, or any Loan Documents and no waiver, forbearance or other action by Agent with regard thereto shall be effective unless the same has been reduced to writing and executed by an authorized representative of Agent, Principals and each and any other entity deemed necessary or desirable by Agent.

SF:192416.2

*Asset Real Estate & Investment*
*James S. Koenig*
*January 3, 2008*

_____

     If you have any questions or desire any additional information, you may contact the undersigned at the above address. You may also have your legal counsel contact Agent's legal counsel as follows: Randy Rogers; Winston & Strawn LLP; 101 California St., San Francisco, CA 94611; rrogers@winston.com; Phone: 415-591-1406; Fax: 415-591-1400.

                          Very truly yours,

                          GENERAL ELECTRIC CAPITAL CORPORATION

                          By:

                                Richard T. Arrowsmith
                    Its:     Senior Vice President

cc:    Hirschler Fleisher (via email, facsimile at 804-644-0957 and overnight delivery)
       Attn: Bill Tate
       Diana Pennington
       Winston & Strawn LLP
       Attn: Randy Rogers

# EXHIBIT "G"



**GE Commercial Finance**
*Healthcare Financial Services*

Richard Arrowsmith
Senior Vice President

Two Bethesda Metro Center, Ste. 600
Bethesda, MD 20814
301.347.3124 (office)
866.206.5052 (fax)
richard.arrowsmith@ge.com

February 4, 2008

**BY FACSIMILE (530-226-1484)**
**OVERNIGHT DELIVERY AND EMAIL**

Asset Real Estate & Investment Company
443 Redcliff Drive, Suite 100
Redding, California 96002
Attention: James S. Koenig, President

James S. Koenig
443 Redcliff Drive, Suite 100
Redding, California 96002

Re:    <u>**DEMAND FOR PAYMENT AND NOTICE OF INTENT TO FILE LEGAL ACTION**</u>

<u>**THIS LETTER DEMANDS PAYMENT OF AN UNPAID OBLIGATION AND NOTIFIES YOU THAT YOUR FAILURE TO PAY WILL RESULT IN COMMENCEMENT OF A LAWSUIT.**</u>

<u>**THIS LETTER IS NOT THE FIRST IN A SERIES OF DEMANDS. IT IS THE ONLY LETTER THAT YOU WILL RECEIVE PRIOR TO COMMENCEMENT OF LEGAL RIGHTS AND REMEDIES.**</u>

Gentlemen:

Reference is made to that certain Agreement of Principals dated as of January 13, 2006 (as it may be amended from time to time, the "Agreement"), by and among Asset Real Estate & Investment Company and James S. Koenig (together the "Principals", and each a "Principal") and General Electric Capital Corporation, as Lender and as agent (in its capacity as agent, "Agent"). Capitalized terms used herein without definition shall have the meanings assigned thereto in the Agreement .

The Agreement provides that the Principals shall have personal liability for repayment of the Loan and various other Obligations under certain circumstances. In my letter to you of January 3, 2008, I provided you with notice of your obligations under the Agreement and made demand upon you for payment thereof. I have received no response to that letter.

Demand is made once again for repayment of your obligations to Agent. As of January 29, 2008, that amount was as follows:

| | |
|---|---|
| Principal | $16,727,188.33 |
| Interest | $   694,817.79 |
| Late Charges | $     12,058.00 |
| Costs/Prepayment charges, etc.: | $ 2,787,790.86 |
| Advances re taxes/insurance: | $          -17.30 |
| | |
| Total | $20,221,837.68 |

The amount set forth will increase by interest accrual of $5,533.91 per day. In addition to the foregoing, Agent has incurred costs and expenses, including attorneys fees, that have not yet been charged to the loan account and for

*Asset Real Estate & Investment*
*James S. Koenig*
*February 4, 2008*

---

which you are responsible under the terms of the Agreement.  The amount of such costs and expenses will be provided to you if you are prepared to make payment.

Demand is hereby made for payment of the full amount set forth above no later than 12:00 noon EDT, February 15, 2008.  Payment should be made care of the undersigned.  If payment is not made by such date, Agent intends to proceed with exercise of its legal rights and remedies.  Such rights and remedies will include initiation of legal proceedings in accordance with the Agreement.

**DO NOT CONSIDER THIS TO BE THE FIRST IN A SERIES OF DEMANDS.  NO FURTHER NOTICE WILL BE GIVEN PRIOR TO ENFORCEMENT OF LEGAL RIGHTS AND REMEDIES.**

**YOUR FAILURE TO REPAY THE OBLIGATIONS DEMANDED IN THIS LETTER WILL HAVE IMPORTANT LEGAL CONSEQUENCES.  YOU SHOULD CONSULT WITH YOUR LEGAL COUNSEL IN RESPONSE TO THIS LETTER.**

When you are prepared to tender payment, please contact the undersigned for an exact payment amount.

Agent hereby reserves all rights and remedies under the Agreement, the Loan Agreement, the Loan Documents, at law and in equity.  Any failure or delay by Agent in exercising any right, power or remedy under the Agreement, the Loan Agreement, the Loan Documents, at law and in equity, nor any acceptance of partial performance or partial payment, (a) shall not operate as a waiver of such right, power or remedy, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise of such right, power or remedy or the exercise of any other right, power or remedy, and (b) shall not be sufficient, by itself or together with any other action or inaction by Agent, to establish a course of dealing or course of conduct by Agent upon which Principals shall be entitled to rely.   Notwithstanding the existence or content of any communication – including any verbal conversations – by or between Principals and Agent, or any of their representatives, regarding any matters pertaining to the Agreement, the Loan Agreement, or any Loan Documents and no waiver, forbearance or other action by Agent with regard thereto shall be effective unless the same has been reduced to writing and executed by an authorized representative of Agent, Principals and each and any other entity deemed necessary or desirable by Agent.

If you have any questions or desire any additional information, you may contact the undersigned at the above address.  You may also have your legal counsel contact Agent's legal counsel as follows: Randy Rogers; Winston & Strawn LLP; 101 California St., San Francisco, CA 94611; rrogers@winston.com; Phone: 415-591-1406; Fax: 415-591-1400.

Very truly yours,

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____
        Richard T. Arrowsmith
Its:    Senior Vice President

cc:    Hirschler Fleisher (via email, facsimile at 804-644-0957 and overnight delivery)
        Attn: Bill Tate
        Diana Pennington
        Winston & Strawn LLP
        Attn: Randy Rogers